Patrick C. BRAUN, Plaintiff
and Appellant,

v.

Beverly J. BRAUN, Defendant
and Appellee.

Civ. No. 940271.

Supreme Court of North Dakota.

May 31, 1995.

Rauleigh D. Robinson (argued), Mandan, for plaintiff and appellant.

Zuger, Kirmis & Smith, Bismarck, for defendant and appellee; argued by Patricia E. Garrity.

MESCHKE, Justice.

Patrick C. Braun appealed from that part of a divorce decree allocating marital debts and property. We affirm.

Patrick and Beverly J. Braun began living together in 1986, married in February 1988, and had two children. Michael was born on November 2, 1986, and Nicholas on August 8, 1988. In 1988, Patrick was 36 years old for his first marriage. Beverly was then age 34, had been married once before, and had two children from her prior marriage. To begin with, Patrick purchased a mobile home where they lived. In 1989, they sold it and moved into a Bismarck home.

Patrick has a high school education and has worked for the City Street Department since 1986. Beverly attended Bismarck State College into 1987 for a commercial art degree, and worked part-time while in college. She stayed home to care for Michael and Nicholas until 1990, when she began working part-time again. Since 1992, Beverly has worked full-time for St. Alexius Medical Center.

Patrick sued Beverly for divorce on October 26, 1993, but did not file the case. Because, when Patrick left, he removed property and changed some joint accounts to his name alone, Beverly filed the case two days later to get an interim order freezing assets.

Beverly soon requested amendment of the interim order for temporary custody of the boys and "family support" from Patrick. On December 16, 1993, the trial court ordered that, "[s]ince [Beverly] has custody of the children, is capable of supporting herself, and is willing to assume the basic expenses associated with the family home, I find this is an appropriate case for determining the obligation of the father for child support rather than 'family support.'" The court ordered Patrick to pay child support of $525 per month, allowed Patrick to use frozen funds for insurance payments, and scheduled Patrick's visits with the boys. The court vacated part of the interim order that "requires [Patrick] to return or not remove money from accounts," but ordered Patrick and Beverly "to make all future expenditures from their respective current incomes" and to "be prepared to account for any expenditures not made from current assets."

Beverly attempted again to amend the interim order, requesting that Patrick use family funds to make the home mortgage payment. On February 18, 1994, the trial court ruled Beverly's motion "deals with essentially the same problems that existed and were addressed in my decision," and "decline[d] to address this matter any further."

After a trial in June 1994 and two amendments of findings on the children's investments and visitation, the trial court entered a divorce decree in August that placed primary custody of the boys with Beverly, ordered Patrick to pay her $525 monthly for child support, and divided the marital debt and property. Patrick appeals.

Patrick does not contest custody or support, but challenges the division of marital debt and property. He claims that the trial court erroneously valued and unfairly divided certain property, including not putting him in charge of the children's investments, forced him to provide for Beverly's two children from her prior marriage, and did not fairly

consider the amount of property he brought to the marriage. We are unconvinced.

Patrick argues that the trial court failed to properly adjust for Beverly not making the home mortgage payments expected in the interim order. He claims, while "he was contributing his appropriate share for the support of the children," "Beverly was simply disregarding the Court's order to make the house payments," and the net marital estate was thereby reduced. Beverly claims she "did not have the financial ability to make the house payments" and "tried to get help from the trial court on that very issue" by her attempts to amend the interim order.

The trial court found that neither Patrick's or Beverly's conduct "was ... so grievous or harmful that it must significantly affect the division of the marital estate, except that the Court does find that [Patrick] dominated [Beverly] relative to the financial affairs of the parties and showed a considerable lack of consideration and personal support relative to [Beverly]'s lack of business acumen." This finding answers Patrick's complaint about Beverly's interim conduct, too.

■ We will not reverse a trial court's marital property distribution, a finding of fact, unless it is clearly erroneous. *van Oosting v. van Oosting*, 521 N.W.2d 93, 96 (N.D. 1994). Such a finding "is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction a mistake has been made." *Id.* We do not believe a mistake was made here.

■ When Beverly and Patrick married, he had many investment accounts: an EF Hutton balance of $11,299 on December 31, 1986; an HIS Government Securities balance of $4,954 on December 31, 1986; 200 ounces of silver purchased in April 1987; an HIS Basic Value Series of $3,679 on December 31, 1987; an HIS Growth Series of $7,799 on December 31, 1987; and a Mass Financial International Trust–Bond Portfolio of $17,258 on May 30, 1986, partly redeemed to buy the mobile home. Patrick also owned a van, a Corvette, and two motorcycles. At the divorce, Patrick also still had a prior IRA then worth $5,089, a prior pension worth $17,058,

and a current pension begun on May 7, 1986, worth $14,668. Besides these savings, their marital property included the personal property Patrick and Beverly each had in their possession, several vehicles, investment accounts for Nicholas and Michael, a $6,355 bank account, $20,263 net proceeds from sale of the marital home, and debts of $8,500, for a total marital estate of $72,687.

The trial court distributed the proceeds from the sale of the home and two-thirds of Patrick's City pension to Beverly. The court divided the vehicles, left each with the personal property in their possession, equally divided the bank accounts, and ordered the children's investments transferred to a trustee agreed upon by both parents. The court distributed all remaining investments, the IRA and prior pension, and one-third of the City pension to Patrick. The court ordered Patrick to pay family medical bills, Beverly to pay her student loan and credit card bill, and each to pay their own attorney fees. Beverly received net assets of $37,831, and Patrick received net assets of $43,355.

"[T]he court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper." NDCC 14–05–24. In distributing property,

> the trial court must consider all relevant factors and should follow the *Ruff–Fischer* guidelines. The objective is to equitably divide property based on the circumstances of the case. In the total marital estate to be divided, the trial court must include all of the real and personal property owned by the parties, regardless of the source. Separate property, whether inherited or otherwise, must initially be included in the marital estate. The origin of the property can, however, be considered in making an equitable property division. A property division need not be equal to [be] equitable, but a substantial disparity must be explained.

*van Oosting*, 521 N.W.2d at 95–96 (citations omitted). *See Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). Although Patrick received a larger share of the assets, he is dissatisfied.

■ Patrick argues that the trial court valued his pickup and the bank accounts closer to the amount Beverly listed than his listing. Beverly responds that the court valued Patrick's motorcycles below what Patrick himself had listed. A trial court's valuation of property is a finding of fact, "presumptively correct," and subject to the clearly erroneous standard. *Heggen v. Heggen*, 488 N.W.2d 627, 629 (N.D.1992). "The trial court, which had the opportunity to observe the demeanor and credibility of the parties, is in a far better position than an appellate court in ascertaining the true facts regarding the property's value." *Freed v. Freed*, 454 N.W.2d 516, 521 (N.D.1990). It is not usually wrong for a trial court to accept the valuations submitted by one spouse over the other's, or to weigh one spouse's value testimony more heavily. *Id.* This record supports the valuations by the court, and those valuations are not clearly erroneous.

■ Patrick urges that the trial court forced him to support Beverly's two children from her prior marriage. In its findings, the court said:

The two minor children of the parties and [Beverly] are part of a family of five, including the two minor children of [Beverly's] from a previous marriage. [Beverly] will be faced with significant problems in finding a suitable place of residence for this group. The Court will, therefore, award the direct net proceeds from the sale of the marital home, including accumulated interest, to [Beverly].

Patrick says that "the initial proceeds for purchase of the marital home were Patrick's investments prior to the relationship between these parties" and argues that "the Trial Court essentially awarded Patrick's premarital assets to Beverly to support her and the children from her previous marriage." However, the court assessed many factors without making Beverly's prior children Patrick's direct support obligation. *Compare* NDCC 14–09–09 (part): "A stepparent is not bound to maintain the spouse's dependent children, ... unless the child is received into the stepparent's family. If the stepparent receives them into the family, the stepparent is liable, to the extent of his or her ability, to

support them during the marriage and so long thereafter as they remain in the stepparent's family." The court specifically identified Nicholas and Michael as Patrick's children to support, observing as well that "[t]he station in life and the circumstances and necessities of each party" indicate that "each will have financial difficulties in the future in supporting themselves and their two minor children." In reasoning that Beverly would face "significant problems" in maintaining a home for herself and all her children, the court was particularly defining Beverly's needs to properly care for their two children. The distribution of the home proceeds to Beverly is equitable.

■ Patrick contends the trial court erroneously gave Beverly too much of his City pension, and should have given her less than half of it, instead, by using the *Bullock* formula. The *Bullock* formula for retirement accounts is a common method that equally divides only that portion of a deferred pension earned during the marriage when the pension is vested but not presently accessible for allocation. *Welder v. Welder*, 520 N.W.2d 813, 815–16 (N.D.1994). *See Bullock v. Bullock*, 354 N.W.2d 904, 908–09 (N.D.1984). However, use of the *Bullock* formula is not the only method of distributing a pension, nor is it mandatory. *Anderson v. Anderson*, 504 N.W.2d 569, 571 n. 2 (N.D.1993). The court allocated more of the City pension to Beverly in recognition of "the continuing direct burdens [Beverly] will bear in attempting to manage this household of several children, while retaining employment outside the home, as well as the significant value of her child rearing and homemaking efforts, schooling, and outside employment during the marriage." The trial court thus directly allocated part of an accessible pension to accomplish an overall equitable division.

Patrick mainly argues the court did not fairly consider that he brought more property to the marriage. Yet the trial court applied the *Ruff–Fischer* factors and explained its division:

(15) ... The length of the marriage was sufficient for the parties to have established long-range plans and to have contributed significantly to the marriage.

The age of the parties is such that their ability to increase their earning capacity at this point is limited. The earning ability of the parties is probably static for the indefinite future.

. . . .

(17) The station in life and the circumstances and necessities of each party are such that neither is living significantly above the level of life of the other, and each will have financial difficulties in the future in supporting themselves and their two minor children.

(18) [Patrick] has shown that both before and during the marriage he utilized good judgment and strength of purpose to make financial investments from what has been a limited income. His savings benefitted the parties during their marriage. [Beverly] did not bring any monetary assets to the marriage, but did contribute significant value by managing the household and by bearing and raising the two minor children of the parties. The efforts of [Beverly] to better herself and to further her education during the marriage was understood by the parties to have a potential future benefit for both. The award to [Patrick] of the higher percentage of the retirement accounts is an acknowledgment of the value of the investments he brought with him to the marriage. The award of the net proceeds of the family home and the smaller percentage of the retirement accounts to [Beverly] is an acknowledgment of the continuing direct burdens she will bear in attempting to manage this household of several children, while retaining employment outside the home, as well as the significant value of her child rearing and homemaking efforts, schooling, and outside employment during the marriage.

Despite Patrick's argument that, because he brought more value to the marriage, he was entitled to a greater share, we conclude the trial court fairly considered what he had before his union with Beverly.

 The trial court recognized Patrick's prior property by granting him "the higher percentage of the ... investments he brought with him to the marriage." Premarital property need not be set aside to the spouse who brought it to the marriage, and

"premarital acquisition is only one of several factors to be considered." *Freed,* 454 N.W.2d at 521–22. Still, Patrick insists he is entitled to everything he had when their marriage began in 1988, and that only the net increase since then should be divided equally. But when spouses live together for a time, have children together, and then marry, the trial court may properly consider all of their time together. A divorce court is not confined to dividing only the specific values saved during the marriage. We conclude the trial court made an equitable distribution.

Patrick argues the trial court erred in not placing the children's investment accounts in his sole control, since he alone began and handled them. In its first findings, the trial court suggested, since Patrick and Beverly could not agree on how to handle them, those accounts could be transferred under the Uniform Transfers to Minors Act. There is record correspondence that shows Patrick and Beverly tried to name a third party as custodian of the children's accounts, but could not agree. Later, in supplemental findings and the final decree, the trial court ruled:

> The investments made on behalf of the two minor children should be protected by the mother and father. These investments should be transferred to trustees or custodians chosen and agreed upon by the parents pursuant to a trust or transfer document, the terms of which are agreeable to both parents. In the event an agreement to the handling of these investments on behalf of the two minor children cannot be reached by the parents, one or both of the parents may petition the Court for its Order expressly directing the manner in which the funds will be transferred and handled.

Patrick contends "[i]t would seem far more prudent to allow these accounts to be maintained by Patrick who has the most interest in the welfare of his children. He has also demonstrated fiscal responsibility." Patrick also asserts that the "accounts needed close watching and needed to be sold when gains were realized."

Beverly contends "Pat's choice of high risk stocks are inappropriate for the boys' school funds" and points out that "Nick's account lost $1,000 in value during the last quarter of

1993, and Mike's account lost about $500 during the same period." Beverly also argues, because "Pat holds terrific animosity" for her, "[t]o allow Pat to continue as custodian of the accounts [would create] only another source of conflict."

Where funds have been set aside by the parents for the benefit of the children, we believe that "courts should foster it, not frustrate it," and that courts have power to preserve existing investments for the children upon a divorce. *Olson v. Olson*, 445 N.W.2d 1, 4 (N.D.1989). It was appropriate for the trial court to set aside the children's investments and to require agreement on their administration. We affirm the order that Patrick and Beverly must mutually agree upon the trustee for those accounts. If an agreement cannot be reached, ultimate control of the children's property remains for the trial court to determine.

The evidence supports the trial court's allocation of debt, the valuation of property, and the distribution. We are not left with a firm conviction that a mistake was made.

We affirm.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.