2003 ND 16

**John D. SHIELDS, Jr., Plaintiff and Appellee,**

v.

**Gevaine L. SHIELDS, Defendant and Appellant.**

**No. 20020142.**

Supreme Court of North Dakota.

Feb. 19, 2003.

Don R. Krassin, Krassin Law Office, Wahpeton, ND, for plaintiff and appellee.

Craig M. Richie, Richie & Associates, Fargo, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Gevaine Shields appealed from a district court judgment which granted the parties a divorce, divided their marital property, and denied either party spousal support.[1] Gevaine challenges the denial of spousal support. We hold the failure to award spousal support to Gevaine is clearly erroneous, and we reverse and remand the judgment of the district court.

I

[¶ 2] Gevaine and John Shields were married in September 1984. During the course of their marriage, they had three children, born in 1987, 1988, and 1992. Gevaine had earned a bachelor of arts degree in communications prior to the marriage. While John searched for permanent full-time employment, Gevaine worked outside the home at various jobs, unrelated to her degree, to supplement John's income and to obtain health insurance for the family. Gevaine quit working after the birth of their third child, who was born with an "immune deficiency," and became a homemaker and the primary caregiver for the parties' children. She is now 40 years old and unemployed.

[¶ 3] John is 44 years old and works for Qwest Communications ("Qwest") in Wahpeton, North Dakota. His employment with Qwest began on a part-time basis in 1985, and he has worked there regularly since 1990. John's yearly income varies depending on the amount of overtime he works, but his gross income for 2001 was $64,138.

[¶ 4] Gevaine and John separated in November 2000, and he filed a complaint in April 2001, seeking a divorce on the grounds of irreconcilable differences. Although Gevaine did not respond by serving an answer, she did respond by motion, asking in part for custody of the three children and "temporary support, alimony, attorneys fees, and costs." An interim order awarded Gevaine $1,100 in child support and ordered John to pay the parties' mortgage payment instead of paying spousal support, stating "[n]o spousal support shall be awarded at this time."

[¶ 5] When Gevaine and John divorced in April 2002, they agreed Gevaine would have primary physical care and custody of the children, with John having visitation. Under the child support guidelines, the district court calculated John should pay

---

1. Gevaine's notice of appeal states she is appealing from an order dated April 3, 2002, which is titled "Findings of Fact, Conclusions of Law and Order for Judgment." We treat a party's attempted appeal from an order for judgment or a memorandum decision as an appeal from a subsequently entered consistent judgment. *Thompson v. Associated Potato Growers, Inc.*, 2000 ND 95, ¶ 6 n. 2, 610 N.W.2d 53. Because a judgment consistent with the district court's order for judgment was subsequently entered, we consider this an appeal from the judgment.

$1,402 monthly for child support. Gevaine received $55,149 in net property distributions, and John received $54,226. Under the property distribution, the district court awarded Gevaine the marital home in Kindred, North Dakota. She had requested permanent spousal support in the amount of one-half of John's net pay, after it was reduced by his child support obligation. However, the court declined to award any spousal support and also specifically divested itself of jurisdiction over the issue. Gevaine argues the district court's failure to award spousal support was clearly erroneous because the evidence demonstrates she is a disadvantaged spouse.

## II

[¶ 6] A district court's determination on spousal support is treated as a finding of fact which will not be set aside on appeal unless clearly erroneous. *Sommer v. Sommer*, 2001 ND 191, ¶ 8, 636 N.W.2d 423. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made. *Fox v. Fox*, 2001 ND 88, ¶ 14, 626 N.W.2d 660.

[¶ 7] According to N.D.C.C. § 14–05–24.1, "[t]aking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time." A court must apply the *Ruff–Fischer* guidelines when determining whether spousal support should be awarded. *Heinz v. Heinz*, 2001 ND 147, ¶ 11, 632 N.W.2d 443. Under the *Ruff Fischer* guidelines, a district court considers:

the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their

station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Mellum v. Mellum*, 2000 ND 47, ¶ 15, 607 N.W.2d 580 (noting the *Ruff–Fischer* guidelines originated from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966)).

## III

[¶ 8] We have held "[a] disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity." *Walker v. Walker*, 2002 ND 187, ¶ 15, 653 N.W.2d 722 (citing *Corbett v. Corbett*, 2001 ND 113, ¶ 19, 628 N.W.2d 312); *see also Sommer v. Sommer*, 2001 ND 191, ¶ 10, 636 N.W.2d 423 (stating "a valid consideration in determining whether a spouse is disadvantaged as a result of the divorce is whether there is a need to equitably balance the burdens created by the divorce where the parties cannot maintain the same standard of living apart as they enjoyed together"). The district court did not explicitly state Gevaine was not a disadvantaged spouse, but such a finding can be inferred from the failure to award spousal support and the following finding of fact:

Gevaine has a B.A. Degree from Concordia College, Moorhead, Minnesota, which was obtained in 1984. She has worked for various periods of time for the Fargo Forum, Blue Cross and Blue Shield, and 3M. Since the parties [sic] children have been small, Gevaine has

stayed home raising the children. Gevaine does not wish to have to seek employment as she prefers to remain at home with the children, and there is no evidence that she has attempted to find any employment since the separation of the parties. Gevaine is intelligent and articulate and in good health and is capable of full time employment.

[¶ 9] However, the facts of this case suggest Gevaine is a disadvantaged spouse. As we stated in *Weigel v. Weigel,* 2000 ND 16, ¶ 13, 604 N.W.2d 462, "[a]ny spouse who remains at home, out of the workforce, in order to maintain a marital residence and act as a homemaker, any parent who remains out of the workforce ... to provide child care, has foregone opportunities and has lost advantages that accrue from work experience and employment history." For approximately the first half of the parties' 18–year marriage, Gevaine worked at jobs, not within the field of her degree, in order to support John's career advancement. Gevaine then left the workforce after the birth of the parties' third child and acted as a homemaker and stay-at-home mother. She fulfilled these roles, rather than pursuing her own career or educational opportunities, while John advanced in his career. Even an individual like Gevaine, who is "intelligent and articulate and in good health and is capable of full time employment," may require spousal support to balance the burdens created by divorce. *See Riehl v. Riehl,* 1999 ND 107, ¶ 11, 595 N.W.2d 10 (stating spousal support attempts to balance the burdens and disadvantages created by divorce).

■ [¶ 10] Spousal support awards must be made in consideration of the disadvantaged spouse's needs and of the supporting spouse's needs and ability to pay. *Moilan v. Moilan,* 1999 ND 103, ¶¶ 11, 13, 598 N.W.2d 81 (reversing a trial court's denial of spousal support to a disadvantaged spouse). Under an interim order, Gevaine received over $1,800 a month from John, through child support and his payment of the mortgage. Currently, Gevaine receives only the $1,402 child support payment; thus, while Gevaine's income substantially decreased after the divorce was initiated, it further decreased when the divorce was finalized. At trial Gevaine submitted her monthly expenses, which totaled $3,772.50. Subtracting the $1,402 monthly child support payment, she would need to supplement her income by $2,370.50 per month to meet the expenses she submitted.

[¶ 11] The district court made no specific findings regarding the reasonableness of Gevaine's stated monthly expenses, although John challenged some individual expenses. The court simply found: "Gevaine is capable of employment sufficient to meet her reasonable monthly living expenses when combined with the child support she will receive from John." We do not know whether this means Gevaine is capable of employment earning the $2,370.50 per month, as required in her prepared budget, or if some other amount was intended by the phrase "reasonable monthly living expenses." Assuming the district court intended the $2,370.50 figure, it made no findings regarding how Gevaine could earn this amount given her career and educational history or to account for childcare expenses if she obtained full-time employment. Furthermore, assuming the court believed Gevaine could find employment to meet her expenses, the court did not retain jurisdiction to consider spousal support in the future if she was unable to obtain employment that would enable her to do so. *See Kopp v. Kopp,* 2001 ND 41, ¶ 5, 622 N.W.2d 726 (stating a trial court subsequently lacks jurisdiction to award spousal support when it makes no initial

award of spousal support and fails to expressly reserve jurisdiction over the issue); *cf. van Oosting v. van Oosting*, 521 N.W.2d 93, 101 (N.D.1994) (stating trial courts should explicitly retain jurisdiction when there is uncertainty about the future need for spousal support).

[¶ 12] John also submitted a list of his monthly expenses. Because the district court did not award any spousal support, no findings were made regarding John's needs or ability to pay. On remand, the court will need to consider the needs of both parties and John's ability to pay.

[¶ 13] Gevaine requested permanent spousal support, but we conclude this request also encompassed lesser forms of support. Permanent and rehabilitative spousal support are recognized as distinct remedies:

> Permanent support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage.
>
> Rehabilitative spousal support, on the other hand, is appropriate when it is possible to restore an economically disadvantaged spouse to independent economic status, or to equalize the burden of divorce by increasing the disadvantaged spouse's earning capacity. There are two approaches to awarding rehabilitative spousal support. One is the "minimalist doctrine" which has as its objective rehabilitating the recipient for minimal self-sufficiency. We have rejected this doctrine in favor of the more "equitable" approach to determining rehabilitative spousal support, which attempts to provide education, training, or experience that will enable the recipient to achieve "adequate" or "appropriate" self-support while improving her employment skills.

*McDowell v. McDowell*, 2001 ND 176, ¶ 12, 635 N.W.2d 139 (citing *Riehl v. Riehl*, 1999 ND 107, ¶¶ 11–12, 595 N.W.2d 10 (citations omitted)). John argues rehabilitative spousal support is not appropriate because Gevaine did not present any specific rehabilitation plan; the district court also found no evidence Gevaine searched for employment after the parties separated.

[¶ 14] While Gevaine may not have presented a specific plan for the future or started applying for jobs, we have stated, "[a] specific plan of rehabilitation may well be preferable to platitudes about wanting to go to school, but we have not required such specificity in the past." *Corbett v. Corbett*, 2002 ND 103, ¶ 12, 646 N.W.2d 677 (requiring a factual basis in the record for the length of time spousal support is awarded) (citing *Bader v. Bader*, 448 N.W.2d 187, 190 (N.D.1989)). Furthermore, the record demonstrates Gevaine has considered her future plans. She testified she would need to complete her master's degree to find employment in her degree field and would likely need to search for employment in Fargo, North Dakota.

[¶ 15] We conclude the district court erroneously failed to consider other factors, including Gevaine's foregone opportunities and contributions to John's increased earning ability, Gevaine's monthly needs and John's ability to pay spousal support, and the likelihood Gevaine will require further education or training to reenter the job market. *See Moilan v. Moilan*, 1999 ND 103, ¶ 16, 598 N.W.2d 81. On the entire evidence, we are left with a definite and firm conviction a mistake has been made in that Gevaine will need, at a minimum, rehabilitative support enabling her to establish a career in which she can earn the supplemental income necessary to meet her monthly needs.

## IV

[¶ 16] We reverse the judgment and remand for further proceedings in accordance with this opinion.

[¶ 17] CAROL RONNING KAPSNER, MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.

I concur in the result., DALE V. SANDSTROM.