2006 ND 142

**Sue Ann DeMERS, Plaintiff and Appellant**

v.

**Jeffrey Wayne DeMERS, Defendant and Appellee.**

**No. 20050184.**

Supreme Court of North Dakota.

June 29, 2006.

Alan Sorensen, Bulie Law Office, Grand Forks, N.D., for plaintiff and appellant.

Michael S. McIntee, McIntee Law Firm, Bottineau, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Sue DeMers appeals from a divorce judgment awarding Jeff DeMers primary physical custody of the parties' two children, awarding her spousal support, and distributing the parties' marital property. We conclude the district court's spousal support decision is not clearly erroneous, the court erred in failing to apply the statutory presumption against awarding custody to a perpetrator of domestic violence, and the court failed to sufficiently explain a substantial disparity in the par-

ties' property distribution. We affirm in part, reverse in part, and remand.

I

[¶ 2] Sue and Jeff DeMers began living together in 1992 and were married in 1996. The parties have two children together. In December 2002, Sue DeMers sued Jeff DeMers for divorce.

[¶ 3] Jeff DeMers owns his own farming operation and also farms in partnership with his father and brother. Sue DeMers was employed in various office positions until 1998. In 2000, Sue DeMers opened a tanning salon that went out of business in 2003, and she has been unemployed since. Jeff DeMers brought a substantial portion of the martial estate into the marriage debt free, including farmland he inherited and property related to the farming operation. The court found the net value of the marital estate is $792,948.

[¶ 4] After a 2004 divorce trial, the court granted the parties a divorce, distributed the marital estate, awarded the parties joint legal custody of the children, awarded Jeff DeMers physical custody of both children, and awarded Sue DeMers temporary spousal support in the amount of $1,200 per month for twelve months.

II

[¶ 5] Sue DeMers argues the district court erred in awarding Jeff DeMers primary physical custody of the parties' two children, because the court failed to invoke the statutory presumption against awarding custody to a perpetrator of domestic violence.

[¶ 6] Section 14–09–06.1, N.D.C.C., authorizes a district court to award custody of a child to the person who will promote the best interests and welfare of the child. Section 14–09–06.2(1), N.D.C.C., sets out the factors a court must consider in determining the best interests of the child. Un-

der N.D.C.C. § 14–09–06.2(1)(j), there is a rebuttable presumption against awarding custody to the perpetrator of domestic violence:

> In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent.

N.D.C.C. § 14–09–06.2(1)(j). Domestic violence is defined as:

> physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

N.D.C.C. § 14–07.1–01(2).

 [¶ 7] A district court's determination of whether there has been domestic violence and whether the statutory presumption is applicable are findings of fact that will not be set aside on appeal unless they are clearly erroneous. *Gonzalez v. Gonzalez*, 2005 ND 131, ¶ 6, 700 N.W.2d 711; *Lawrence v. Delkamp*, 2000 ND 214, ¶ 7, 620 N.W.2d 151. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Cox v. Cox*, 2000 ND 144, ¶ 9, 613 N.W.2d 516. " 'A choice between two permissible views of the evidence is not clearly erroneous[,]' " and we recognize the district court is in a better position to assess the credibility of the witnesses and weigh the evidence. *Morton County Soc. Serv. Bd. v. Schumacher*, 2004 ND 31, ¶ 16, 674 N.W.2d 505 (quoting *Ryan v. Flemming*, 533 N.W.2d 920, 924 (N.D. 1995)). "When a [district] court addresses whether evidence of domestic violence triggers the presumption, the court must make specific and detailed findings regarding the effect the allegations of domestic violence have on the presumption." *Cox*, at ¶ 17. If the evidence of domestic violence does not rise to the level to trigger the presumption, the court may still consider the evidence as one of the best-interests factors. *Id.* Whether a district court misinterprets or misapplies a statute is a question of law fully reviewable on appeal. *Lawrence*, at ¶ 7.

[¶ 8] At trial, Sue DeMers testified to four incidents of domestic violence. The first occurred in 1998, when the parties were returning home from an anniversary celebration. Sue DeMers testified she was driving and Jeff DeMers started yelling at her, told her to stop the vehicle, pulled her out of the vehicle, and started hitting and kicking her. She also testified Jeff DeMers tried to leave her by the road, but came back for her when another vehicle began approaching, and he then began beating her again and threw her in the vehicle. Jeff DeMers disagreed with Sue DeMers' version of the incident. Jeff DeMers claimed Sue DeMers was driving 100 miles per hour, he made her stop, and she was injured when he attempted to wrestle the keys from her and they fell out of the vehicle. The incident was not re-

ported to police and Sue DeMers did not receive any medical care, but the day after the incident pictures were taken of Sue DeMers' injuries, and those pictures were admitted into evidence at trial.

[¶ 9] Sue DeMers testified the second incident occurred in 1999 when Jeff DeMers threw her down a flight of stairs and she received some bruises. She testified the children witnessed the incident and were very upset. Sue DeMers testified the third incident occurred in 2001 when she was fighting with Jeff DeMers and he came after her. The police and Sue DeMers' mother were called, and the police asked Sue DeMers to leave the parties' home with her mother. No charges were filed as a result of this incident. Jeff DeMers testified that the second and third incidents were not separate incidents. He admitted pushing Sue DeMers down the stairs, but claimed she was loud and drunk, and he did not want her to wake their sleeping children.

[¶ 10] Sue DeMers testified the fourth incident occurred in October 2003, after she filed for divorce and shortly after the court issued an interim order awarding Sue DeMers temporary possession of the parties' farmhouse. At the time, Jeff DeMers was living in another building on the parties' farm. Sue DeMers testified that Jeff DeMers held up an ax and threatened to kill her with it if she stepped off the driveway. She testified she went into the house as a result of his threat, and she did not confront him. Jeff DeMers testified the incident occurred in the winter, he was carrying an ax to chop a hole in the ice for the cattle to drink, and the threats were made in a joking manner.

[¶ 11] The district court addressed Sue DeMers' allegations of domestic violence and made the following findings:

> The Court recalls three specific incidents. One is returning home after an anniversary celebration. Sue claimed that Jeff made her get out of the car and caused her bruises and injuries. According to her, Jeff left her behind, but did finally pick her up. Jeff described that Sue was driving 100 miles per hour on a gravel road. He attempted to stop her. When they were stopped, they were wrestling for the keys and they fell out together causing both to be injured. According to Sue, the next morning Jeff stated that it would not happen again. Although the Court may question all of the details as described by Sue, it believes that the incident was more accurately described by her than by Jeff. The Second incident happened at their home. Jeff acknowledged that he had pushed her down the stairs because of his frustration with her. She did sustain some minor bruises. The police were called and Sue was asked to leave the home. This may have been because the children were sleeping and her mother was present to take her to another location. The third incident involved an axe. Jeff made a threatening motion with the axe and stated he should kill her. Sue believed him. Jeff testified that it was intended as a joke. The Court doubts that it was done as a joke as Jeff does not appear to be a person who jokes around. However, it also does not believe that he intended to carry out any threat. Although there have been three incidents, the Court finds that there is insufficient evidence to trigger the presumption relating to domestic violence.

[¶ 12] Under N.D.C.C. § 14–09–06.2(1)(j), the presumption against awarding custody to the perpetrator of domestic violence is triggered when there is credible evidence of domestic violence, and there exists at least one incident which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a

pattern of domestic violence within a reasonable time proximate to the proceeding. *See, e.g., Gonzalez,* 2005 ND 131, ¶ 6, 700 N.W.2d 711.

[¶ 13] The evidence presented supports the district court's finding that there was credible evidence of domestic violence. The court found Sue DeMers was more credible about the first incident of domestic violence. The court also found Jeff DeMers did not intend the incident with the ax to be a joke. Under N.D.C.C. § 14–07.1–01(2), a threat constitutes an incident of domestic violence if the threat results in the infliction of fear of imminent physical harm. *Lawrence,* 2000 ND 214, ¶ 6, 620 N.W.2d 151. The district court found Jeff DeMers threatened to kill Sue DeMers with an ax if she stepped off the driveway, and the threat was not intended as a joke. The court also found Sue DeMers believed the threat, and therefore found she feared imminent physical harm. Whether Jeff DeMers intended to carry out the threat is irrelevant. We conclude the court's finding of credible evidence of domestic violence is supported by the evidence and is not clearly erroneous.

[¶ 14] However, after making this finding the court failed to apply the statutory presumption, finding there was insufficient evidence to trigger the presumption. Because the court failed to make specific and detailed findings regarding the effect the allegations of domestic violence had on the presumption, it is unclear why the court concluded there was insufficient evidence to trigger the presumption. The presumption against awarding custody to the perpetrator of domestic violence must be applied when the district court finds there is credible evidence of domestic violence and the incident involved the use of a dangerous weapon. N.D.C.C. § 14–09–06.2(1)(j). Jeff DeMers argues the incident with the ax

could not trigger the presumption because it did not involve "use of a dangerous weapon" within the meaning of the statute.

[¶ 15] We have previously recognized an ax is a dangerous weapon. *See Morton County,* 2004 ND 31, ¶ 19, 674 N.W.2d 505. In *Morton County,* the district court found a father's use of an ax to destroy a computer screen was not domestic violence. *Id.* at ¶ 14. But the facts in *Morton County* are distinguishable from this case. In *Morton County,* the district court found the evidence did not establish the father was threatening the mother or she feared imminent physical harm, and destruction of property without fear of imminent physical harm or actual bodily harm was insufficient to find domestic violence occurred. *Id.* at ¶ 17. This Court concluded the district court did not err in finding no domestic violence had occurred. *Id.* at ¶ 19. *See also Tulintseff v. Jacobsen,* 2000 ND 147, ¶ 11 n. 2, 615 N.W.2d 129 (stating no evidence father's acts caused mother to be immediately afraid father would harm her and the acts therefore were not evidence of domestic violence).

[¶ 16] Here, the district court found Jeff DeMers threatened Sue DeMers with the ax and stated he should kill her, and Sue DeMers believed his threat and thus feared imminent harm. Using a dangerous weapon, such as an ax, to threaten someone and cause fear of imminent harm is "use" of a weapon under N.D.C.C. § 14–09–06.2(1)(j). In this case, the presumption was triggered by the court's finding on the incident with the ax. The court nevertheless did not apply the presumption and determine whether it had been overcome by clear and convincing evidence. We therefore conclude the district court misapplied the statute when it failed to apply the rebuttable presumption to the custody determination, and we re-

mand for specific findings regarding the presumption.

[¶ 17] On remand the district court must make a custody determination applying the statutory presumption. When applying the statutory presumption in a custody decision, domestic violence becomes the paramount factor to consider. *Thompson v. Olson*, 2006 ND 54, ¶ 10, 711 N.W.2d 226; *Lawrence*, 2000 ND 214, ¶ 3, 620 N.W.2d 151. Although domestic violence is the paramount factor in this case, the presumption may be overcome if the district court finds there is "clear and convincing evidence that the best interests of the child require [Jeff DeMers'] participation as a custodial parent." N.D.C.C. § 14–09–06.2(1)(j).

### III

[¶ 18] Sue DeMers argues the district court did not fully address the *Ruff–Fischer* guidelines in awarding her spousal support. She argues the spousal support decision is clearly erroneous because the court took a "minimalist" approach in awarding her spousal support and there is no basis for the duration of the award except to allow her to look for employment. Jeff DeMers argues Sue DeMers is judicially estopped from asking for more spousal support because she did not ask the district court for spousal support.

### A

[¶ 19] This Court has declined to decide whether judicial estoppel applies in North Dakota. *Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 16, 693 N.W.2d 1. But, assuming the doctrine of judicial estoppel may be applied in this case, we conclude it would not bar review of the district court's spousal support award. " 'The doctrine applies only where a party's subsequent position is totally inconsistent with its original position . . . . ' " *Id.* at

¶ 17 (quoting *Meide v. Stenehjem*, 2002 ND 128, ¶ 15, 649 N.W.2d 532). Although Sue DeMers did not ask the district court to award her any spousal support, she did request an equal distribution of the marital estate, and the court did not distribute the property equally. "Questions of property division and spousal support cannot be considered separately or in a vacuum, but ordinarily must be examined and dealt with together . . . ." *Sommers v. Sommers*, 2003 ND 77, ¶ 15, 660 N.W.2d 586. Although neither party requested spousal support,

> the district court has broad discretion in making an equitable distribution of property and allocation of spousal support to address the individual needs of divorcing parties. The exercise of that judicial function is not limited by the specific requests of the parties so long as the basis for the decision can be discerned.

*Ingebretson*, 2005 ND 41, ¶ 18, 693 N.W.2d 1 (citations omitted). Because the spousal support and property division issues are intertwined, Sue DeMers' challenge to the court's spousal support award is not inconsistent with her initial request for half the marital estate, which was denied. We conclude Sue DeMers is not judicially estopped from asserting the district court erred in its spousal support award.

### B

[¶ 20] A district court's decision on spousal support is a finding of fact that will not be set aside unless clearly erroneous. *Ingebretson*, 2005 ND 41, ¶ 6, 693 N.W.2d 1. When determining whether spousal support should be awarded, the district court must apply the *Ruff–Fischer* guidelines, which require the court to consider the following factors:

> the respective ages of the parties to the marriage; their earning abilities; the

duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Shields v. Shields*, 2003 ND 16, ¶ 7, 656 N.W.2d 712 (quoting *Mellum v. Mellum*, 2000 ND 47, ¶ 15, 607 N.W.2d 580). In considering the *Ruff–Fischer* guidelines, "[t]he district court's decision should be rationally based, but it is not required to make specific findings on each factor." *Ingebretson*, at ¶ 7.

[¶ 21] Here, the district court awarded Sue DeMers spousal support of $1,200 per month for twelve months. The court found Sue DeMers was 41 years old at the time of the divorce, had a two year degree, had not been employed outside the home since her tanning business closed, and was in good physical health, with some mental health issues. The court also found Sue DeMers was a disadvantaged spouse. Although this Court no longer requires an explicit finding of a "disadvantaged spouse" to award spousal support, *see Sack v. Sack*, 2006 ND 57, ¶¶ 11–12, 711 N.W.2d 157, from the court's findings we can infer the court concluded rehabilitative support was appropriate because Sue DeMers had forgone opportunities or lost advantages as a consequence of the marriage and she contributed during the marriage to Jeff DeMers' earning capacity. *See, e.g., Shields*, 2003 ND 16, ¶ 8, 656 N.W.2d 712. In support of its conclusion, the court stated, "[s]he has not been in the job market for over six years and will need additional funds until she can find employment."

[¶ 22] Sue DeMers argues the court took a "minimalist" approach in awarding her spousal support. This Court has rejected the "minimalist" approach to spousal support, which has an objective of rehabilitating the recipient for minimal self-sufficiency, in favor of the "equitable" approach, which attempts to provide education, training, or experience that enable the recipient to achieve adequate self-support while improving her employment skills. *Shields*, 2003 ND 16, ¶ 13, 656 N.W.2d 712.

[¶ 23] The district court did not apply a "minimalist" approach, but instead considered the *Ruff–Fischer* guidelines and determined what would be an appropriate amount of spousal support to allow Sue DeMers time to find employment that would allow her to support herself. The district court's decision is rationally based, and the court was not required to make specific findings on each factor of the *Ruff–Fischer* guidelines. The court's findings provide an adequate explanation for its decision to award Sue DeMers temporary rehabilitative spousal support. We conclude the district court's decision is not clearly erroneous.

IV

[¶ 24] Sue DeMers argues the district court failed to fully address the *Ruff–Fischer* guidelines in distributing the parties' marital property, and the court did not adequately explain the disparity in the property distribution.

A

[¶ 25] Jeff DeMers argues Sue DeMers waived her right to appeal the property division by demanding and then accepting the benefits of the judgment.

[¶ 26] In order to equalize the property distribution, the district court required Jeff DeMers to pay Sue DeMers $5,350 by

April 15, 2005, and $20,000 by May 1, 2005. The court also awarded Sue DeMers various personal property and household items, $75,000 toward the purchase of a home, and $100,000 paid in ten annual installments of $10,000. The court required Jeff DeMers to give mortgages, security interests or liens, to Sue DeMers within thirty days of the judgment to secure the payments. The judgment was entered on April 13, 2005. On April 14, 2005, Jeff DeMers paid Sue DeMers $5,350 at the request of her attorney. On April 26, 2005, Jeff DeMers paid Sue DeMers $20,000, also at the request of her attorney. On April 28, 2005, Sue DeMers' attorney sent a letter to Jeff DeMers' attorney requesting the mortgage be executed. The mortgage was subsequently executed and recorded.

[¶ 27] Generally, individuals that unconditionally, voluntarily and consciously accept a substantial benefit from a divorce judgment waive the right to appeal the judgment. *Sommers*, 2003 ND 77, ¶ 5, 660 N.W.2d 586. However, in *Sommers* we explained:

> This court has sharply limited the rule in domestic cases to promote a strong policy in favor of reaching the merits of an appeal. Before a waiver of the right to appeal can be found, there must be an unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment. The party objecting to the appeal has the burden of showing the benefit accepted by the appealing party is one which the party would not be entitled to without the decree. There must be unusual circumstances, demonstrating prejudice to the movant, or a very clear intent on the part of the appealing party to accept the judgment and waive the right to appeal, to keep this court from reaching the merits of the appeal.

*Id.* (quoting *Wetzel v. Wetzel*, 1999 ND 29, ¶ 5, 589 N.W.2d 889).

[¶ 28] Sue DeMers did not waive her right to appeal the judgment. Although the mortgage was executed and she received a portion of the cash awarded, she did not unconditionally, voluntarily, and consciously accept the benefits and waive the right to appeal the judgment. The judgment required that the mortgage be executed within thirty days, and required Jeff DeMers pay $5,000 by April 15, 2005 and an additional $20,000 by May 1, 2005. The district court made time of the essence by putting time limitations on the property distribution. We therefore conclude Sue DeMers did not consciously accept the benefits of the divorce judgment and waive her right to appeal the property distribution.

## B

[¶ 29] A district court's decision on a property division is a finding of fact subject to the clearly erroneous standard of review. *Striefel v. Striefel*, 2004 ND 210, ¶ 7, 689 N.W.2d 415. The district court must consider the *Ruff–Fischer* guidelines when distributing property. *Id.* Although the district court must equitably distribute the marital estate, a "property division does not need to be equal to be equitable, but a substantial disparity must be explained." *Young v. Young*, 1998 ND 83, ¶ 11, 578 N.W.2d 111.

[¶ 30] Here, the district court found the net value of the DeMers' marital estate was $792,948. The court awarded Sue DeMers approximately one fourth and Jeff DeMers approximately three fourths of the marital estate. We conclude the court's unequal distribution of the marital estate constitutes a substantial disparity which must be adequately explained. In

explaining the unequal distribution, the court said:

> The Court believes that an equal distribution is not appropriate in this case. The Court is making the distribution on a 13 year relationship. *Braun v. Braun,* 532 N.W.2d 367, 371 (N.D.1995); *Kautzman v. Kautzman,* 1998 N.D. 192 ¶ 13, 585 N.W.2d 561. The Court believes that Sue contributed to the economic unit. Jeff did bring more assets to the marriage. By this distribution Sue will be given some funds to relocate and to purchase a modest home if she wishes. She will also have some additional funds over the next ten years to invest or spend as she chooses.

■■■■■■ [¶ 31] The court's explanation for the substantial disparity in the property distribution is insufficient. While the court found Jeff DeMers brought a substantial portion of debt free property into the parties' 13–year relationship, that is only one consideration and alone is an insufficient explanation for the disparity. All the parties' assets are subject to distribution, including those brought into the marriage or acquired by inheritance or in a similar manner. *Dufner v. Dufner,* 2002 ND 47, ¶ 9, 640 N.W.2d 694. Without further explanation for this disparity, we are unable to determine whether the court's decision was appropriate.

■■■ [¶ 32] Jeff DeMers argues the district court's explanation was sufficient because the court cited *Braun v. Braun,* 532 N.W.2d 367 (N.D.1995), in its analysis. In *Braun,* this Court quoted the district court's analysis of the *Ruff–Fischer* guidelines, including some language regarding the parties' financial conduct. *Id.* at 370–71. Jeff DeMers claims it is clear the district court was incorporating the *Braun* findings into its decision, and therefore based the unequal property distribution on the parties' financial conduct or misconduct during the marriage. However, it is not clear the court's cite to *Braun* incorporated the findings from that case. If the court wanted to make findings comparable to those in *Braun,* the court could have clearly stated those distinct findings and its rationale for the substantial disparity in the property distribution. Citation to a case alone, without further analysis, is not sufficient to explain the disparity.

■■■ [¶ 33] We conclude the district court failed to sufficiently explain the substantial disparity in the property distribution, and we are unable to understand the basis for its decision. We reverse the district court's property distribution and remand for further proceedings. On remand the court may either make further, more specific findings to justify the disparity, or it may re-examine the original distribution. Property division and spousal support must be considered together, particularly when there is a disparity in one spouse's earning power. *Sommers,* 2003 ND 77, ¶ 15, 660 N.W.2d 586. Although on this record we have concluded the district court's spousal support determination is not clearly erroneous, because we are remanding for further findings on the property distribution, if the court decides to re-examine the original property distribution it may also reconsider its spousal support determination.

V

[¶ 34] We affirm the district court's spousal support decision, and we reverse the court's child custody determination and the property distribution and remand for further proceedings consistent with this opinion.

[¶ 35] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, J., concur.

CROTHERS, Justice, concurring.

[¶ 36] I concur in the result but write separately because the "substantial benefits" test of appealability in domestic cases no longer functions, if indeed it once functioned.

[¶ 37] This Court employs a three-part test to determine whether a party in a divorce case has waived the right to appeal the judgment. *Sommers v. Sommers,* 2003 ND 77, ¶ 5, 660 N.W.2d 586. To conclude waiver of the right to appeal has occurred, the test requires (1) unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment on the part of the appellant; (2) a showing by the appellee that the benefit accepted by the appellant is one to which he or she would not be entitled without the divorce decree; and (3) either unusual circumstances prejudicing the movant or a very clear intent on the part of the appellant to accept the judgment and waive the right to appeal. *Id.* I believe it is time to part with the third prong of the test.

[¶ 38] The first prong of the test, the unconditional, voluntary, and conscious acceptance of a substantial benefit, was developed following a line of cases stemming back to the Nineteenth Century. *See Tyler v. Shea,* 4 N.D. 377, 61 N.W. 468 (1894). This is the well-established "general rule" applicable to essentially all areas of civil practice.

[¶ 39] The second prong, requiring the appellee to show the benefit is not one the appellant would have entitlement to absent the divorce decree, allows an appellant to accept benefits to which he or she is entitled as a matter of right without sacrificing the right to appeal. The reasoning is that such benefits would not be affected on appeal. This is an exception widely recognized throughout American jurisdictions and was adopted after a review of other jurisdictions in *Hoge v. Hoge,* 281 N.W.2d 557, 563 (N.D.1979). *See* 29 A.L.R.3d 1184.

[¶ 40] The third prong, requiring unusual prejudicial circumstances or a clear intent upon the part of the appellant to accept the judgment and waive the right to appeal is unique to North Dakota and was first suggested in 1991 in the case of *Spooner v. Spooner,* 471 N.W.2d 487 (N.D. 1991). In *Spooner,* Justice Levine commented in dicta that "[i]t should be an unusual set of circumstances, one demonstrating prejudice to the movant, or a very clear intent on the part of the appellant to accept the judgment and waive the right to appeal, that keeps us from reaching the merits of an action." *Id.* at 490. The *Spooner* dicta became part of the test in *Wetzel v. Wetzel,* 1999 ND 29, ¶ 5, 589 N.W.2d 889.

[¶ 41] From wording of the third prong alone, it is difficult to envision how a litigant contemplating an appeal could act in such a way as to make it obvious to others that he or she wishes to accept a judgment or that he or she wishes to waive the right to appeal. The result reached by the majority in this case goes the next step and shows this to be the case. Here, known acceptance of benefits under the judgment, received after demand by appellant's counsel, were deemed acts consistent with—and not a waiver of—the right to appeal. This result proves to me that the *Spooner* dicta come *Wetzel* test has consumed the "substantial benefit" rule.

[¶ 42] The record shows that the first two prongs of the test are satisfied by the facts of this case. The majority acknowledges "the mortgage was executed and [Sue DeMers] received a portion of the cash awarded." Majority Opinion, ¶ 28. Such receipt of funds is an unconditional, voluntary, and conscious acceptance of benefits. Moreover, the benefits Sue

DeMers received are certainly benefits to which she was not entitled without the divorce decree, a fact argued by Jeff DeMers and acknowledged by the majority in paragraph 28: "The *judgment required* that the mortgage be executed within thirty days, and *required* Jeff DeMers pay $5,000 by April 15, 2005 and an additional $20,000 by May 1, 2005." (Emphasis added.)

[¶ 43] Although the majority fails to indicate which prongs of the test, if any, it deems "satisfied," absent the all-consuming third prong I believe Sue DeMers could reasonably be viewed to have waived her right to appeal if the legitimacy of this test had been challenged on appeal. Because no such challenge was mounted here, I urge reevaluation of this test when this issue is brought squarely before us.

[¶ 44] Daniel J. Crothers

SANDSTROM, Justice, concurring in part and dissenting in part.

[¶ 45] I concur in part II of the opinion.

[¶ 46] I concur in the result of part III of the opinion.

[¶ 47] I dissent as to part IV of the opinion. The district court sufficiently explained its reasoning for the property division. That the majority might have distributed the property differently does not equate with "a failure to sufficiently explain," nor does it justify reversing and remanding the district court. *See Ulsaker v. White*, 2006 ND 133, ¶ 24 (Sandstrom, J., dissenting).

[¶ 48] Dale V. Sandstrom