# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 112

| | |
|---|---|
| Melanie J. Tschider,<br>a/k/a Su Lin Tschider, | Plaintiff, Appellee,<br>and Cross-Appellant |
| v. | |
| Stacy L. Tschider, | Defendant, Appellant,<br>and Cross-Appellee |
| and | |
| State of North Dakota, | Statutory Real Party in Interest |

No. 20180104

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Sonna M. Anderson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Douglas W. Murch (argued) and Robert J. Schultz (on brief), Fargo, ND, for plaintiff, appellee, and cross-appellant.

Steven T. Ottmar (argued) and Joanne H. Ottmar (appeared), Jamestown, ND, for defendant, appellant, and cross-appellee.

**McEvers, Justice.**

[¶1]    Stacy Tschider appeals and Melanie Tschider, also known as Su Lin Tschider, cross-appeals from a judgment that granted joint parenting responsibility of their minor child and awarded child support, distributed the parties' property and debts, and awarded spousal support to Melanie Tschider.  We conclude the district court erred in holding a provision of the parties' prenuptial agreement was unconscionable and unenforceable and erred in awarding spousal support.  We, however, conclude the court's property distribution was not clearly erroneous and the court did not abuse its discretion in denying her request for attorney fees.  We affirm in part, reverse in part, and remand for further proceedings.


I

[¶2]    Stacy Tschider and Melanie Tschider were married in December 2002 and have one minor child born in 2004.  Shortly before their marriage, both parties signed a prenuptial agreement in December 2002.  The parties began dating in 1995 and began living together in 1996.  At the time of their marriage, Melanie Tschider had a net worth of less than $50,000 and annual income of $55,548.  Stacy Tschider had a net worth of $1,783,500 and an annual income of about $245,000.  He had ownership interests in six businesses with a book value of about $2.9 million and five parcels of investment real estate, resulting in substantial annual income.  In August 2015, Melanie Tschider commenced this divorce action.

[¶3]    The district court bifurcated the issues in this case for trial.  In November 2016 the court held a trial on residential responsibility for the child and on the validity of the parties' prenuptial agreement.  After the first trial, the court awarded joint residential responsibility and determined an amount for child support.  The court also held the prenuptial agreement was valid, except for a provision addressing spousal

support. Specifically, the court held that the agreement's paragraph 16 was unconscionable and unenforceable. This paragraph states:

> SUPPLEMENTATION OF INCOME IN EVENT OF CHILDREN
>
> 16. In the event children are born of the marriage, and in the event Su-Lin and Stacy decide or determine it is in the best interests that Su-Lin reduce or terminate her employment so as to allow Su-Lin to spend more time with the children, and in the event the parties divorce, then, and in that event, it is mutually agreed that Stacy shall supplement Su-Lin's income as provided herein. The supplementation of income as described above shall be in a sum equal to the difference between Su-Lin's monthly income at the time of marriage or at the time Su-Lin reduces or terminates her employment for purposes of spending more time with the children, whichever is greater, and the monthly income earned by Su-Lin following the divorce. It is acknowledged and agreed that the supplementation amount may vary from month-to-month depending upon Su-Lin's actual income. It is mutually agreed that Stacy's obligation to supplement Su-Lin's income shall terminate two (2) years from the date Stacy makes his first supplemental income payment to Su-Lin pursuant to this agreement; it being the intention of the parties that Stacy's obligation to supplement Su-Lin's income shall be limited to a total of twenty-four (24) monthly payments.
>
> It is acknowledged and agreed that the foregoing income supplementation payments shall be deemed temporary alimony and not child support payments.

[¶4] In June 2017, the district court held a second trial on the remaining issues. At the second trial, the parties presented further evidence regarding child support, division of assets and liabilities, enforcement of the prenuptial agreement, spousal support, and attorney fees.

[¶5] In January 2018, the district court issued its further findings of fact and order for judgment that divided the parties' remaining joint property, ordered Stacy Tschider to pay child support of $2,878 a month beginning June 2017, and ordered him to pay spousal support of $6,500 per month for five years beginning on September 1, 2015, through August 1, 2020, and then $4,000 per month for two additional years until August 1, 2022. Final judgment was entered in February 2018.

II

[¶6] Stacy Tschider argues the district court erred in deciding the parties' prenuptial agreement's paragraph 16 is unconscionable and unenforceable. He further argues that, if the provision is invalid, the court erred when it set the retroactive commencement date, the amount, and the duration of the spousal support award. In her cross-appeal, Melanie Tschider argues the parties' entire premarital agreement is invalid and the court's spousal support award is clearly erroneous.

[¶7] The Uniform Premarital Agreement Act, N.D.C.C. ch. 14-03.1, allows parties to contract to the disposition of their property on divorce. At the time of the parties' 2002 prenuptial agreement, N.D.C.C. § 14-03.1-03(1)(a) and (c) provided that parties may agree to "[t]he rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located" and to "[t]he disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event." Under N.D.C.C. § 14-03.1-03(1)(d), the parties may also agree to "[t]he modification or elimination of spousal support." Section 14-03.1-07 (2002), N.D.C.C., states:

> Notwithstanding the other provisions of this chapter, if a court finds that the enforcement of a premarital agreement would be clearly unconscionable, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provisions, or limit the application of an unconscionable provision to avoid an unconscionable result.

[¶8] We have explained that under the Uniform Premarital Agreement Act, a premarital agreement may be deemed unenforceable if it is unconscionable "at the time of execution, at the time of separation or marital dissolution, or at the time of enforcement." *Sailer v. Sailer*, 2009 ND 73, ¶ 22, 764 N.W.2d 445 (citing N.D.C.C. § 14-03.1-06(1)(b); N.D.C.C. § 14-03.1-06(2); N.D.C.C. § 14-03.1-07; *Estate of Lutz*, 2000 ND 226, ¶ 25, 620 N.W.2d 589). Whether a premarital agreement is unconscionable presents a question of law; however, "it turns on factual findings related to the relative property values, the parties' financial circumstances, and their ongoing need." *Sailer*, at ¶ 21 (quoting *Binek v. Binek*, 2004 ND 5, ¶ 10, 673 N.W.2d 594); *see also Estate of Lutz*, 1997 ND 82, ¶ 44, 563 N.W.2d 90. "The substantive

3

enforceability of a premarital agreement is a matter of law to be decided by the court." *Pember v. Shapiro*, 2011 ND 31, ¶ 39, 794 N.W.2d 435 (quoting *Sailer*, at ¶ 21). "A premarital agreement is a contract, and its interpretation is a question of law, which this Court reviews de novo on the entire record." *Brummund v. Brummund*, 2010 ND 119, ¶ 6, 785 N.W.2d 182 (quoting *Tweeten v. Tweeten*, 2009 ND 164, ¶ 11, 772 N.W.2d 595).

[¶9] We have said that "when trial courts discuss whether a premarital agreement is 'clearly unconscionable' under N.D.C.C. § 14-03.1-07, the analysis requires complete factual findings about the relative property values and the other resources and foreseeable needs of the spouse asserting the premarital agreement is unconscionable." *Sailer*, 2009 ND 73, ¶ 26, 764 N.W.2d 445; *see also Estate of Lutz*, 1997 ND 82, ¶ 45, 563 N.W.2d 90. Here, the district court made factual findings explaining and supporting its legal conclusion that paragraph 16 is unconscionable. The court, however, declined to declare the entire prenuptial agreement unconscionable from its inception on the basis of its findings surrounding the agreement's execution shortly before their marriage. Rather, the court made findings about the "minimal amount" of spousal support allowed to support its conclusion that the premarital agreement's paragraph 16 is unconscionable.

[¶10] The district court found Stacy Tschider had an average income of over $800,000, while Melanie Tschider stayed home with the minor child and earned "a fraction" of that amount. The court found his income since 2009 had varied from $107,000 in 2012 to over $2,000,000 in 2014. The court found that although Melanie Tschider has accounting skills, she had been out of the work force for several years and would need to refresh her accounting skills and familiarity with new regulations before she could become fully employable. The court also found her income from the closely-held companies was not certain to continue after the divorce was final. The court therefore found Melanie Tschider was in need of rehabilitative spousal support and Stacy Tschider was capable of paying rehabilitative support. The court found the amount of reasonable support for her to reenter the workplace was $6,500 per month

4

for five years beginning on September 1, 2015, through August 1, 2020, and then $4,000 per month for an additional two years until August 1, 2022.

[¶11] Stacy Tschider argues the district court's finding of unconscionability is inapposite with its other findings and urges this Court to hold paragraph 16 is enforceable. He acknowledges no bright-line rule exists as to what is unconscionable regarding a waiver of spousal support in a premarital agreement but asserts Melanie Tschider has received great economic benefit from the marriage. He relies on the court's findings that she is leaving the marriage with nearly $3 million of an approximately $14 million marital estate, or almost twenty-two percent of the entire estate, with an ownership interest in eight of seventeen existing businesses. He asserts she has the ability to reacquire her CPA certification and earn $90,000 per year in addition to her part-time work, bringing her potential annual income to $150,000.

[¶12] Melanie Tschider responds that the district court did not err in deciding paragraph 16 is unconscionable and unenforceable because the court made specific findings about the parties' net worth and income, addressed the parties' estimated monthly living expenses, and specifically found her income from minority positions in the closely-held companies was not certain. In her cross-appeal, however, she argues the entire prenuptial agreement, rather than only paragraph 16, is invalid. She contends she did not voluntarily execute the agreement, she executed the agreement under duress, and did not have the opportunity to consult independent legal counsel.

[¶13] She further contends the district court's spousal support award is clearly erroneous because a permanent spousal support award is appropriate based on the substantial disparity between the spouses' incomes. She asserts that they enjoyed a high standard of living throughout their marriage and that she will never be able to match Stacy's income. She contends the court underestimated her "fair and reasonable" monthly living expenses.

[¶14] While the district court properly held the parties' premarital agreement was mostly valid and enforceable, we conclude that the court's findings also support the conclusion that paragraph 16 is valid and enforceable as a matter of law. At the time

5

of the initial trial, Melanie Tschider was 47 years old. She has a college degree in accounting and obtained her CPA in 1992. She worked as a public accountant in New York City for a year before returning to Bismarck as the chief accountant at BNC Bank in 1995, where she was subsequently promoted to controller. She worked for WBI Holdings as a certified public accountant at the time the premarital agreement was signed in 2002 until the parties' child was born in 2004. She thereafter worked as CFO of Abaco Energy Services, LLC, one of the parties' business entities, beginning in 2007. She works for Abaco part-time earning $30,000 per year, potentially receiving business profits of $75,000 to 80,000 per year according to Stacy Tschider. At the time of trial, Stacy Tschider was 46 years old and is an entrepreneur with interests in 17 different businesses. His main employment is with Rainbow Energy with an annual income of approximately $800,000.

[¶15] Although Melanie Tschider disputes the district court's valuation of the assets, the court found Stacy Tschider's net worth and income increased significantly to $11,019,855 and Melanie Tschider's net worth had increased to $2,991,500. The court found that while Stacy Tschider continues to own the original businesses in his own name, Melanie Tschider has an ownership interest in eight of the seventeen existing businesses. The court found that while the businesses may require some cash contributions, there is a reasonable expectation these businesses will also grow in value increasing the parties' net worth. The court specifically found the agreement was not unconscionable as to the division of the premarital assets.

[¶16] The parties' premarital agreement was apparently signed about eight days after Stacy Tschider provided her the proposed agreement and six days before the parties' marriage, but the district court held the agreement was not unconscionable from its inception. The court found she had consulted with an attorney, proposed revisions that were incorporated into the agreement, and had not argued she did not receive competent legal advice. The court found there is evidence she acknowledged the existence of the agreement over the years and did not dispute the validity of the agreement until these proceedings.

6

[¶17]   Despite not receiving specific exhibits referred to in the agreement, the district court found she had significant general knowledge of his business enterprises.  The court found Melanie Tschider received sufficient financial disclosure at the time the prenuptial agreement was signed.  In awarding rehabilitative spousal support, the district court found she had been out of the work force for several years and would need to refresh her accounting skills and familiarity with new regulations before she could become fully employable. The court also found the income from the closely-held companies was not certain.

[¶18]   On the basis of our review of the record, however, this evidence is not sufficient to find paragraph 16 is clearly unconscionable and unenforceable.  The evidence shows Melanie Tschider is an educated professional, with some level of sophistication at the time of the premarital agreement's execution.  As the district court found, she had received sufficient financial disclosure and had the opportunity to consult an attorney before signing the agreement.  The court specifically rejected her contention that she signed the agreement under duress.  During the marriage she has had some years of high annual income.  Moreover, she is leaving the marriage with significant assets, with some potentially producing income, and she can be employable in her chosen field once she has refreshed her accounting knowledge. Under these facts and circumstances, we cannot conclude that any portion of the parties' agreement is clearly unconscionable and unenforceable.

[¶19]   On this record, we conclude the parties' premarital agreement is valid and enforceable and the district court erred in concluding paragraph 16 was unconscionable and unenforceable.  Because we conclude the district court erred in holding paragraph 16 of the premarital agreement was unenforceable, we also conclude the court erred in awarding spousal support, in contravention to the parties' agreement.  We therefore reverse the judgment to the extent it awards spousal support and remand for the district court to enforce paragraph 16 and to make any related necessary calculations in entering a judgment after remand.

[¶20] Both parties raise a number of issues challenging the district court's distribution of the marital estate, focusing on the proper characterization or treatment of certain property or funds in interpreting and applying the prenuptial agreement's terms. In enforcing the parties' premarital agreement, the district court found some provisions had been disregarded or abandoned and also attempted to equitably distribute certain property in resolving the parties' disputes under the agreement.

[¶21] A district court's decisions regarding the division of marital property are treated as findings of fact and may be reversed on appeal if these findings are clearly erroneous. *Sailer*, 2009 ND 73, ¶ 29, 764 N.W.2d 445 (citing *Lynnes v. Lynnes*, 2008 ND 71, ¶ 12, 747 N.W.2d 93). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made. *Lynnes*, at ¶ 12.

[¶22] Stacy Tschider argues the district court misapplied the prenuptial agreement and erred in deciding that he had an obligation to reimburse Melanie Tschider for business transactions occurring in the past; that the court erred in deciding certain property constituted "contents of the household" under the agreement; that equity in a jointly-owned vehicle must be equitably distributed; that she is required to reimburse him for unpaid living expenses; and that she is required to reimburse him for her share of taxes, preparation fees, and the 2014 tax refund.

[¶23] Melanie Tschider responds in opposition to his arguments; but in her cross-appeal, she argues the district court also erred by not allocating cash to her for a "five-percent" investment account contemplated in the agreement which was not created, erred in not giving her one-half of the Burnt Creek property value, and erred when the court held it had no authority to give her one-half of the value of the Powder Ridge condominium.

[¶24] Here, the district court made sufficient findings for us to understand its reasoning in addressing the various items of property, how it characterized and

distributed the property under the terms of the agreement, what provisions the parties had abandoned or waived, and why the court required certain equitable payments from Stacy Tschider to Melanie Tschider.

[¶25]   For example, under paragraph 5 of the prenuptial agreement, the parties were to establish a joint savings and investment account requiring the signature of both parties to withdraw or transfer funds and each party was to deposit five percent of their estimated monthly net income into the account for purposes of investments.  The district court found that, during the course of the marriage, the parties did not establish the account and did not hold each other accountable to deposit five percent of their monthly income into any similar account for investment purposes.  Rather than engage in "hypothetical accounting gymnastics," the court found the parties had "abandoned" this provision of the prenuptial agreement by their mutual actions.  The court noted that Stacy Tschider had made capital contributions on Melanie Tschider's behalf during the marriage, which substantially increased her net worth. The court found this was a marital gift to her and made no further award under this provision.

[¶26] While paragraph 25 of the prenuptial agreement provides, among other things, that "[n]o waiver of any provision of this Agreement shall be valid unless in writing signed by both parties," the district court nevertheless found the parties had abandoned or, perhaps more accurately, waived certain provisions. "Waiver is a voluntary and intentional relinquishment or *abandonment* of a known advantage, benefit, claim, privilege, or right." *Sanders v. Gravel Prods., Inc.*, 2008 ND 161, ¶ 10, 755 N.W.2d 826 (citation omitted and emphasis added).  This Court has specifically held that "[w]aiver may be established either by an express agreement *or by inference from acts or conduct*," even when a contract contains a clause requiring any waiver or modification of the contract must be in writing.  *Savre v. Santoyo*, 2015 ND 170, ¶ 21, 865 N.W.2d 419 (citation omitted); *see also Estate of Kingston v. Kingston Farms P'ship*, 13 N.Y.S.3d 748, 750 (N.Y. App. Div. 2015) ("Waiver of a contract right through abandonment may be established by 'affirmative conduct' of a contract party and, [g]enerally, the existence of an intent to forgo such a right is a

9

question of fact." (internal quotation marks and citation omitted)); *Amerisure Mut. Ins. Co. v. Global Reinsurance Corp. of Am.*, 927 N.E.2d 740, 747 (Ill. App. Ct. 2010) ("Waiver of a contract term may occur when a party conducts itself in a manner which is inconsistent with the subject clause, thereby indicating an abandonment of its contractual right." (citation omitted)). We have said that "the existence or absence of waiver is generally a question of fact." *Savre*, at ¶ 20 (quoting *Sanders*, 2008 ND 161, ¶ 10, 755 N.W.2d 826). A district court's finding of fact will not be reversed on appeal a unless it is clearly erroneous. *Savre*, at ¶ 11; *Sailer*, 2009 ND 73, ¶ 29, 764 N.W.2d 445. On this record, we conclude the district court's findings that the parties had abandoned or waived paragraph 5 of the prenuptial agreement by their failure to create and contribute to a joint investment account for over thirteen years during the marriage was not clearly erroneous.

[¶27] Stacy Tschider argues the district court erred in its interpretation of agreement paragraphs four and six in its division of various water crafts, snowmobiles, ATVs, and their jointly-titled 2015 Toyota Sequoia by finding these items were part of the household. The parties' prenuptial agreement in paragraph four states that "it is not the intention of the parties to have joint property acquired by them during the marriage." The paragraph further states, "The sole exceptions shall be the marital home, and all contents thereof, vehicles titled in both names, a joint checking account to be utilized to pay household bills and a joint/investment account, which account shall require the signature of both parties to withdraw or transfer funds." Paragraph 6 provides:

> In the event one of the parties acquires or purchases an asset which is not reasonably described as "contents of the household", it shall be presumed that said property is owned solely by the acquiring party/purchaser thereof unless said acquired/purchased asset is titled or purchased in the names of both parties or unless otherwise expressly provided in a writing executed by the purchasing/acquiring party.

[¶28] Stacy Tschider argues the court erred as a matter of law and these items cannot be considered contents of the home. Even assuming an ambiguity, he contends the agreement provides a presumption that the property belongs to the purchaser unless

10

titled in both names or a writing expresses otherwise. He asserts he purchased the contested items in his name alone and is listed on the titles and registration cards for the items. He argues the district court improperly placed the burden on him, and there is no evidence showing Melanie Tschider was to be an owner or in any way contributed to the purchase of these items to rebut the presumption.

[¶29] Here, the district court found the use of the water crafts, ATVs and snowmobiles were an integral part of the family's recreation activities, as the marital home was located on the Missouri River. The court correctly noted the prenuptial agreement does not define "contents of the household." The court held the phrase was inherently ambiguous, and, under N.D.C.C. § 9-07-19, an ambiguity in a written contract was to be interpreted adversely to the party creating the ambiguity. The court found it was therefore reasonable to consider the snowmobiles, boats, jet skis, and jet ski docks as "part of the household" and subject to division as joint property. The court awarded several recreational vehicles to Melanie Tschider, including two snowmobiles if there was not a specific certificate of title for them. In awarding the remaining boats and recreational vehicles to Stacy Tschider, the court found the property had substantial value and the value awarded to him more than compensated him for his share of the 2015 Toyota Sequoia, which the court awarded to her.

[¶30] As the district court noted, one legal dictionary defines "household" as an adjective, "[b]elonging to the house and family; domestic," and as a noun, "1. A family living together. 2. A group of people who dwell under the same roof. . . . 3. The contents of a house." *Black's Law Dictionary* 857 (10th ed. 2014); *see also Merriam-Webster's Collegiate Dictionary* 602 (11th ed. 2005) (also defining "household" as "of or relating to a household"). We agree the phrase "contents of the household" may be ambiguous under the facts and circumstances of this case, to the extent the prenuptial agreement allows an asset to be "reasonably described" as "contents of the household" without providing a further definition of the phrase. Under the facts of this case, it is not "unreasonable" to consider untitled recreational vehicles such as jet skis, and the dock at the marital home as contents of the

11

household. In reviewing the parties' values for the recreational vehicles, the district court awarded Melanie Tschider items valued at around $100,000, which includes the entire value of the 2015 Toyota Sequoia, and the court awarded significantly more value to Stacy Tschider in the remaining recreation vehicles.

[¶31] Further, as discussed, the district court found the parties had abandoned or at least were not strictly following certain provisions of the prenuptial agreement, precluding or rendering difficult some of the calculations requested by the parties. In its findings the district court found, per the parties' agreement, seven of the businesses were not marital property and Stacy Tschider continued to own them free and clear of any claim by Melanie Tschider. The court addressed in its findings an additional eight businesses in which both parties had ownership. The district court then specifically addressed disputes as to two remaining companies, ABACO Energy LLC, and Key Leasing, LLC.

[¶32] In resolving the disputes regarding these two companies, the district court thoroughly explained its decision requiring Stacy Tschider to pay $229,000 and $15,000, respectively, for Melanie Tschider's equitable interest in the businesses. While Stacy Tschider contends he is being required to reimburse her for previous transactions occurring before dissolution of the marriage, it is clear from the findings the court was attempting to trace commingled or joint property to ascertain an equitable share for the specific business transactions.

[¶33] On this record, we conclude the district court's findings regarding the division of property and specific monetary awards are not clearly erroneous and are supported by evidence in the record.

IV

[¶34] Melanie Tschider argues the district court erred in denying her request for attorney fees. "The district court has broad discretion to award attorney's fees in divorce proceedings under N.D.C.C. § 14-05-23." *Tuhy v. Tuhy*, 2018 ND 53, ¶ 17, 907 N.W.2d 351 (quoting *Brew v. Brew*, 2017 ND 242, ¶ 32, 903 N.W.2d 72). The

primary standard to award attorney fees under N.D.C.C. § 14-05-23 is consideration of one spouse's needs and the other spouse's ability to pay. *Tuhy*, at ¶ 17. Here, the district court specifically found the parties had sufficient financial means to bear their own attorney fees. Evidence in the record supports the finding that both parties have the ability to pay their own attorney fees. We conclude the court did not abuse its discretion in refusing to award attorney fees.

V

[¶35] Stacy Tschider argues the district court erred in its determination of Melanie Tschider's child support obligation because it failed to include the spousal support income awarded to her in computing her obligation. He also acknowledges, however, that the court properly found both of their incomes if this Court reverses the district court's spousal support award. Melanie Tschider suggests on appeal that he must pursue a subsequent modification of the judgment to change his child support obligation. Because we are remanding for the district court to apply paragraph 16 of the parties' premarital agreement, the court may also address at that time the parties' issues, if any, regarding the proper calculation of child support.

## VI

[¶36]   We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or are without merit.  The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.  Further, because a new judge has been assigned to this case, the district court on remand must also certify compliance with N.D.R.Civ.P. 63.

[¶37]   Lisa Fair McEvers
        Jon J. Jensen
        Jerod E. Tufte
        Daniel D. Narum, D.J.
        Gerald W. VandeWalle, C.J.


[¶38]   The Honorable Daniel D. Narum, D.J., sitting in place of Crothers, J., disqualified.

14