2013 ND 12

**Lorne C. SATEREN, Plaintiff and Appellee**

v.

**Marilyn L. SATEREN, Defendant and Appellant.**

**No. 20120192.**

Supreme Court of North Dakota.

Jan. 23, 2013.

Patti J. Jensen (appeared), Brian C. Balstad (appeared), Ronald I. Galstad (appeared) and John Schroeder (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, East Grand Forks, Minn., for plaintiff and appellee.

Jacey L. Johnston (argued) and DeWayne Johnston (appeared), Grand Forks, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Marilyn Sateren appeals from an order denying reallocation of marital property in a stipulated divorce case, and Lorne Sateren moves to dismiss the appeal. We deny Lorne Sateren's motion to dismiss because Marilyn Sateren has not waived her right to appeal by unconditionally, voluntarily and consciously accepting a substantial benefit under the divorce judgment. We reverse the order denying reallocation of marital property and remand for the district court to adequately explain the evidentiary and theoretical basis for its decision to deny reallocation.

I

[¶ 2] The parties were married in 1984 and had one child, a son who is now emancipated. In June 2010, Lorne Sateren commenced a divorce action against Marilyn Sateren. The summons contained the restraining provisions of N.D.R.Ct. 8.4(1), prohibiting either spouse from disposing of, selling, encumbering, or otherwise dissipating "any of the parties' assets." On November 18, 2010, the day scheduled for the divorce trial, the parties reached an agreement resolving the issues involved in the divorce.

[¶ 3] No written stipulation was executed, but the attorneys for the parties explained the agreement to the district court. As read into the record, the agreement provided that Marilyn Sateren would receive the remainder interest in her mother's home in Grand Forks, the car in her possession, various items of personal property, financial accounts in her name, and a $50,000 cash property distribution payable in three installments. Marilyn Sateren also agreed to waive spousal support and to divest the court of jurisdiction to further entertain spousal support issues. Lorne Sateren was awarded the parties' farmstead and farmland located in Nelson County, two automobiles, a camper, a boat, financial accounts in his name and a sav-

ings bond, articles of personal property, and all of the marital debt. After questioning the parties about their understandings of the agreement, the court found the agreement to be fair and reasonable and approved it.

[¶ 4] The largest marital asset was the farmland, which Marilyn Sateren had valued in her N.D.R.Ct. 8.3 statement at $194,000 based on a 2009 appraisal. The parties contemplated that Lorne Sateren would obtain a loan on the farmland to satisfy the $50,000 cash property distribution. Lorne Sateren had paid Marilyn Sateren $2,000, but the agreement required that he pay $20,000 within 30 days of entry of judgment and the remaining $28,000 on or before January 1, 2012. The district court's findings of fact recited:

> [Lorne Sateren] shall be awarded all right, title and interest in and to the above-described homestead and farmstead, subject to any existing liens and/or mortgages. [Marilyn Sateren] shall execute a Quit Claim Deed transferring her interest in said property to [Lorne Sateren] as part of the loan process to obtain the $20,000 cash property settlement as outlined in section 3(D).

A judgment incorporating the parties' agreement was not entered until January 26, 2011.

[¶ 5] On December 22, 2010, before the divorce judgment was entered, Lorne Sateren executed a contract to sell the farmland for $248,262. He did not inform the district court or Marilyn Sateren. After the sale of the farmland was closed in March 2011, Marilyn Sateren learned that the farmland had been sold and filed a motion for relief from the divorce judgment under N.D.R.Civ.P. 60. In an affidavit supporting the motion, Marilyn Sateren claimed:

> 4.  Our largest asset was 301.14 acres of farmland in Nelson County

which had been in Lorne's family for some time. The land is the largest asset we owned.

> 5.  That during the course of litigation, there was much discussion regarding the land value. We had the property appraised in 2009 and the value was deemed to be $109,000 on the home, and $194,000 on the 301.14 acres.

> 6.  I believed the land was worth more than the $194,000 but Lorne kept telling me that the land was worth less and the appraisal was extraordinarily high. Lorne argued that the land belonged to his father and it was important for him to keep it in the family.

. . . .

> 14.  If I would have known that Lorne intended on selling the land which had been in his family, I would have not agreed to the terms of divorce as they are written.

> 15.  If I would have known that Lorne was going to sell the land:

>> a.  I would have asked for at least 50% of the net proceeds after legitimate marital debt was paid; or

>> b.  I would have made sure that my equity payment was immediately due and owing.

> 16.  That knowing the land was going to be sold would have made a difference in the cash equity that I negotiated.

> 17.  I know the land was worth more but was willing to concede with the knowledge that the land would be kept in the family and would eventually end up with our son (who is an only child). Obviously, this will never happen now that the land is gone.

[¶ 6] Lorne Sateren stated in an affidavit in opposition to the motion that he contacted a bank after the November 18, 2010 hearing and "was told that I did not qualify to refinance and borrow the money necessary to pay Marilyn." Lorne Sateren said he then contacted an area farmer who had previously rented the land and accepted his offer to purchase it. He said "I was saddened by the fact that I was going to have to sell my family land but I saw no other option as the bank could not loan me the necessary money." Lorne Sateren admitted "I told [Marilyn Sateren] that it was important that I keep the land. However, my inability to refinance the land to pay her the property distribution made it impossible for me to do so."

[¶ 7] Following a motion hearing, the district court in July 2011 appeared to have granted Marilyn Sateren's request for relief from the divorce judgment, stating:

It is clear that the parties contemplated that the farm loan would be refinanced and Defendant would be paid her property settlement partially from the proceeds. However, [one month and] 4 days after the divorce hearing Lorne signed a Purchase Agreement agreeing to sell the farm land for $248,262. This is about $54,000 more than what the parties listed the value of the land on the Rule 8.3. The communication between the attorneys shows that the contemplation was a refinancing.

The sale of the farm land has allowed Lorne to pay off the house and have the $109,000 house while Marilyn is in a low income apartment working at two jobs. Marilyn asserts, and Lorne does not deny, that part of the bargain here was to keep the land in Lorne's family.

. . . .

The Court here finds that a sufficient showing has been made that not grant-ing the motion may lead to a manifest injustice, and results not contemplated and stated by the parties when entering into the divorce settlement. The motion meets the criteria under Rule 60(b)(vi).

Counsel for the Defendant may set a hearing to determine if the property and debt division should be reallocated. The Court will not consider setting aside the sale of the farm land, but may consider a redistribution of the funds.

[¶ 8] On October 14, 2011, Lorne Sateren made the final $28,000 payment on the cash property distribution, and requested that Marilyn Sateren accept the funds only if she signed a satisfaction of judgment. The tendered check contained the notification, "Final PMT." Marilyn Sateren ultimately accepted the payment, but refused to sign a satisfaction of judgment, noting that "the litigation is ongoing" and "it is unknown that this payment will satisfy the Plaintiff's obligation at this time."

[¶ 9] The district court held an evidentiary hearing on October 24, 2011, to determine whether the parties' marital assets and debts should be reallocated. The parties presented evidence focusing on the value of the marital estate and the amount of the parties' debt. In a post-hearing submission to the court, Lorne Sateren argued, "[a]s there is now a dispute in regard to the issue of distribution, the court must determine the value of the parties['] property at the time of the November 18th hearing and consider the same in light of the status of ownership and debt at the time of the October 24th hearing." Both parties in their post-hearing submissions argued the application of the *Ruff–Fischer* guidelines to the facts and proposed their own distributions of the marital property and debt. Marilyn Sateren sought an additional cash award of $47,500 and spousal support in the amount of $200 per month for life.

[¶ 10] In December 2011, the district court refused to reallocate the marital property and debt, reasoning:

The Court finds that the facts as presented by [Lorne] at the divorce hearing November 18, 2010 were not fraudulent and neither was his subsequent conduct. The main issue here is that Marilyn agreed to give up her interest in the farmland so that it could be turned over to the parties' son. Marilyn has contended all along that the property was worth substantially more than that propounded by Lorne. Her value in the Rule 8.3 statement at the time of the divorce hearing was based on a 2009 appraisal. The Court can take judicial notice of the general substantial increase in land prices over the last several years. Marilyn certainly could have gotten a more recent appraisal of the land or requested that the Court order a joint appraisal of the land. Marilyn states that she agreed to the property division so that Lorne would pass the interest on to their son. The Court did not individually examine the property and debts outlined by the parties as the parties were agreeing to the distribution, were represented by experienced counsel and the allocation did not appear unconscionable, based on the circumstances presented at the hearing and in the pleadings. The land was inherited from Lorne's family. Lorne was agreeing to pay the mortgage on the farmland of about $180,000 and about $38,000 in other debts. Lorne was also obligated to pay Marilyn $50,000 in property settlement.

At the hearing October 24, 2011 Lorne testified that he did attempt to refinance the property so that he could pay Marilyn the $50,000 as part of [the] settlement agreement and to pay off the debts that he was agreeing to pay. He in essence agreed to pay off all the parties' marital debts. Lorne could not get refinancing to accomplish this, so he contacted his renter who agreed to pay substantially more for the land than the 2009 appraisal.

. . . .

Lorne stated that he felt the divorce was final as of November 18, 2010 and that the land was going to be his, so he was going to try to get the financing "if possible" to keep the land and pay the settlement as directed. He testified that it was not possible for him to get the financing necessary.

The Court has also examined fully the prospective application of the settlement as it pertains to Marilyn and finds that it does not meet the standard of unconscionable. She entered into it with the advice and assistance of counsel. Marilyn agreed to basically a $50,000 settlement and to be debt free. Lorne agreed to pay off all the debts. Even with the price he received he still has significant obligations to pay. He is a seasonal worker driving truck. He stated he will be laid off during freeze up. He has no health insurance or life insurance benefits and no retirement plan. The farmstead is his and this can still be passed on to the parties' son. There is also a right of first refusal for the farmland. There was no disagreement that Lorne will be responsible for significant capital gains taxes on the sale of the farmland, for which he will be responsible. Lorne testified that the farmstead residence is a double wide trailer 4 miles east of Lakota with structural, water and heating problems.

Based on the foregoing the Court will deny [Marilyn's] request to reallocate the debts and property as originally agreed to by the parties.

## II

■ [¶ 11] Lorne Sateren argues we should dismiss the appeal based on Marilyn Sateren's unconditional, conscious and voluntary acceptance of the cash property distribution granted to her under the divorce judgment.

■ [¶ 12] In *DeMers v. DeMers*, 2006 ND 142, ¶ 27, 717 N.W.2d 545, we said:

Generally, individuals that unconditionally, voluntarily and consciously accept a substantial benefit from a divorce judgment waive the right to appeal the judgment. *Sommers* [*v. Sommers*], 2003 ND 77, ¶ 5, 660 N.W.2d 586. However, in *Sommers* we explained:

This court has sharply limited the rule in domestic cases to promote a strong policy in favor of reaching the merits of an appeal. Before a waiver of the right to appeal can be found, there must be an unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment. The party objecting to the appeal has the burden of showing the benefit accepted by the appealing party is one which the party would not be entitled to without the decree. There must be unusual circumstances, demonstrating prejudice to the movant, or a very clear intent on the part of the appealing party to accept the judgment and waive the right to appeal, to keep this court from reaching the merits of the appeal.

*Id.* (quoting *Wetzel v. Wetzel*, 1999 ND 29, ¶ 5, 589 N.W.2d 889).

[¶ 13] We reject Lorne Sateren's argument for two reasons. First, Marilyn Sateren has not appealed from the divorce judgment. She has appealed from the district court's order denying reallocation of the marital property. Second, even if she were appealing from the divorce judgment, Marilyn Sateren's actions do not evidence a clear intention on her part to accept the judgment and waive the right to appeal. Although Marilyn Sateren accepted the $28,000 check to satisfy the $50,000 cash distribution, she did not sign a satisfaction of judgment and said in an "acknowledgment of compliance with terms of judgment" that "the litigation is ongoing" and "it is unknown that this payment will satisfy the Plaintiff's obligation at this time." This is not an unconditional, voluntary and conscious acceptance of a substantial benefit that waives the right to appeal. We decline Lorne Sateren's invitation to adopt the concurring opinion in *DeMers* as the law in this state. *See* 2006 ND 142, ¶¶ 36–43, 717 N.W.2d 545 (Crothers, J., concurring) (advocating abandonment of the third prong of the test for appealability).

[¶ 14] We deny Lorne Sateren's motion to dismiss the appeal.

## III

■ [¶ 15] Marilyn Sateren argues the district court erred in considering post-divorce judgment evidence during the hearing on reallocation of the marital property. She argues the court erred in failing to reallocate the marital property because Lorne Sateren committed fraud and breach of contract. She also argues the court erred in failing to value the marital estate and to consider the *Ruff–Fischer* guidelines when examining the propriety of reallocation.

[¶ 16] This Court cannot perform its appellate court function unless we are able to understand the basis for the district court's decision. *See, e.g., Gadeco, LLC v. Industrial Comm'n*, 2012 ND 33, ¶ 21, 812 N.W.2d 405; *Estate of Wicklund*, 2012 ND 29, ¶¶ 22, 32, 812 N.W.2d 359; *Clark v. Clark*, 2005 ND 176, ¶ 9, 704 N.W.2d 847. "When a district court provides no indication of the evidentiary and theoretical ba-

sis for its decision, the reviewing court is left to speculate whether factors were properly considered and the law was properly applied." *Clark*, at ¶ 9. We are unable to understand the basis for the court's December 2011 decision.

[¶ 17] We recognize a district court, following proceedings to equitably distribute a marital estate, may reverse an earlier order granting relief from the judgment under N.D.R.Civ.P. 60 that generated the hearing for the consideration of an equitable distribution. *See Eberle v. Eberle*, 2009 ND 107, ¶¶ 12–13, 766 N.W.2d 477. It is unclear if that is what happened in this case. The court found Lorne Sateren's actions were not fraudulent and determined in conclusory fashion that the settlement agreement was not unconscionable, but these were not the bases on which the court appears to have originally granted relief from the judgment in July 2011. The court said "a sufficient showing has been made that not granting the motion may lead to a manifest injustice" and the "motion meets the criterial under" N.D.R.Civ.P. 60(b)(6) because "part of the bargain here was to keep the land in Lorne's family." The obligations between the parties were set when the court approved the settlement agreement on November 18, 2010, even though the final divorce judgment incorporating the settlement agreement was not entered until January 26, 2011. *See* N.D.R.Ct. 8.4(a); *compare Grinaker v. Grinaker*, 553 N.W.2d 204, 208–09 (N.D.1996) ("Common sense dictates that marital property be valued as of the date of trial, rather than the date of distribution" because to hold otherwise would result in "parties continually submitting account statements and other materials with each fluctuation of the financial markets") (footnote omitted); *Zuger v. Zuger*, 1997 ND 97, ¶ 10, 563 N.W.2d 804 (same).

[¶ 18] By selling the farmland, Lorne Sateren violated what the district court appears to have found was a provision of the parties' settlement agreement. Violations of interim provisions affecting marital property before entry of final judgments in divorce cases are not condoned. *See Walstad v. Walstad*, 2012 ND 204, ¶¶ 3–4, 821 N.W.2d 770; *Waldie v. Waldie*, 2008 ND 97, ¶¶ 14–15, 748 N.W.2d 683; J. Tingley and N. Svalina, *Marital Property Law*, Property transfers pending final order of distribution, § 43:37 (Rev.2d ed.2012), and cases collected therein. The court's order on reallocation does not expressly reverse the court's earlier finding on this issue.

[¶ 19] There are at least three plausible interpretations of the district court's December 2011 order. First, the court's July 2011 order was not intended to be a final disposition of Marilyn Sateren's N.D.R.Civ.P. 60(b) motion and, following the evidentiary hearing, the court ultimately denied the motion in its December 2011 order. Second, if the July 2011 order did grant Marilyn Sateren's Rule 60(b) motion for relief from the divorce judgment, the court reversed that decision in its December 2011 order. Third, if the July 2011 order granted Marilyn Sateren Rule 60(b) relief, the court in its December 2011 order, applying equitable principles governing distribution of marital property and debt, found reallocation of the marital property was not necessary. The court's December 2011 order does not shed any light on which of these theories, or any other theories, formed the basis for the court's decision.

[¶ 20] The district court's findings of fact are insufficient for us to understand the evidentiary and theoretical basis for its decision. We therefore reverse and re-

mand for the court to adequately explain the basis for its decision. The court may use its discretion to allow the presentation of additional evidence.

## IV

[¶ 21] We deny Marilyn Sateren's request for costs and attorney fees under N.D.R.App.P. 38 for responding to Lorne Sateren's motion to dismiss the appeal. We reverse the order and remand for further proceedings.

[¶ 22] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 23] I respectfully dissent.

[¶ 24] The district court's analysis clearly shows that it found no basis to grant relief under N.D.R.Civ.P. 60, which was the manner in which relief was sought in this action. The district court was free to revisit its previous rulings until it issued its final decision. The district court has adequately explained its decision.

[¶ 25] I would affirm the decision of the district court.

[¶ 26] Dale V. Sandstrom