# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2022 ND 214

William Frederick Fercho,                                   Plaintiff and Appellee

   v.

Sheri Lynn Fercho,                                          Defendant and Appellant

   and

State of North Dakota,                              Statutory Real Party in Interest

### No. 20220076

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John C. Irby, Judge.

AFFIRMED; MOTION DENIED; FEES AWARDED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices VandeWalle and Crothers joined. Justice McEvers filed an opinion concurring specially.

Michael L. Gjesdahl (argued) and Kari A. Losee (appeared), Fargo, N.D., for plaintiff and appellee.

Rachel M. Hanson, Fargo, N.D., for defendant and appellant.

**Fercho v. Fercho**
**No. 20220076**

**Tufte, Justice.**

[¶1]   Sheri Fercho appeals from a divorce judgment enforcing the parties' premarital agreement, dividing the marital estate, and denying spousal support and attorney's fees. She also appeals an order denying her motion to compel discovery. William Fercho moved to dismiss the appeal on the basis of Sheri Fercho having accepted the benefits of judgment. We deny William Fercho's motion, affirm the judgment and order, and award Sheri Fercho attorney's fees on appeal.

I

[¶2]   William Fercho and Sheri Fercho were married in May 2005. In March 2005, the parties executed a premarital agreement providing that in the event of a divorce, each party shall retain separate ownership of their own non-marital property. At the time, William Fercho had a net worth of $2.95 million and Sheri Fercho had a net worth of $5,359. In May 2020, the parties separated, and William Fercho commenced this divorce action.

[¶3]   Prior to trial, Sheri Fercho moved to compel discovery from William Fercho regarding his family's business interests. After a hearing, the district court denied the motion to compel, but granted Sheri Fercho's motion to continue the trial date and awarded her attorney's fees to pay her attorney and expert. After trial, the court concluded the parties' premarital agreement was valid and enforceable, determined which assets were marital and non-marital and the values of each, awarded Sheri Fercho 70 percent of the marital estate, and denied spousal support and attorney's fees.

II

[¶4]   After the briefs on the merits were submitted, William Fercho moved to dismiss this appeal. He argues Sheri Fercho waived her right to appeal the judgment by accepting its substantial benefits. He asserts all marital assets awarded in the judgment have been distributed to the respective parties.

1

[¶5]  This Court has said that the "general rule" in this state "is that a party to a divorce action who accepts substantial benefits pursuant to a divorce judgment thereby waives the right to appeal from the judgment." *Davis v. Davis*, 458 N.W.2d 309, 311 (N.D. 1990). However, we have recognized numerous exceptions to this rule:

> In *Tyler v. Shea*, 4 N.D. 377, 61 N.W. 468 (1894), we said:
>
>> "Where the reversal of the judgment cannot possibly affect the appellant's right to the benefit he has secured under the judgment, then an appeal may be taken, and will be sustained, despite the fact that the appellant has sought and secured such benefit." 4 N.D. at 381, 61 N.W. at 469.
>
> This exception was further expounded in *Boyle v. Boyle*, 19 N.D. 522, 524, 126 N.W. 229, 230 (1910), wherein we held:
>
>> "If a provision of the judgment appears to have been fixed by consent, or is undisputed, or, for any reason, cannot be changed or reversed by the appeal, an acceptance of the benefit given by such provision is not a waiver of the appeal."
>
> Moreover, in *Grant v. Grant*, [226 N.W.2d 358 (N.D. 1975)] we recognized that the rule which bars a subsequent appeal when substantial benefits of a divorce judgment are accepted is not absolute when we said:
>
>> "Before the waiver of the right to appeal can be found to exist, there must be an unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment." 226 N.W.2d at 361.
>
> . . . .
>
> In addition to the exceptions recognized above, this court has also held that:
>
>> "It is both practical and just that if one jointly or individually possesses an asset during the pendency of

> a divorce action and is subsequently awarded that asset by the divorce judgment, he should not have to divest himself of that asset before appealing the judgment. This is most obvious when the asset is a necessity of life." *Piper v. Piper*, 234 N.W.2d [621] at 623 [(N.D. 1975)].
>
> . . . .
>
> [I]n *Hoge v. Hoge*, 281 N.W.2d 557 (N.D. 1979), we recognized . . . that a party is not estopped from an appeal of a divorce judgment by the acceptance of alimony and property "to which he or she was entitled as a matter of right." 281 N.W.2d at 563.

*Davis*, at 311-12 (quoting *White v. White*, 434 N.W.2d 361, 363 (N.D. 1989)) (cleaned up). We have also declined to dismiss the appeal where the appellant's right to the benefit was not disputed by the movant through cross-appeal. *Spooner v. Spooner*, 471 N.W.2d 487, 489 (N.D. 1991).

[¶6]  In *Spooner*, we further limited the "general rule" to only those rare instances where the movant can demonstrate either prejudice or "very clear intent" of accepting the judgment and waiving the right to appeal, acknowledging the strong public policy of reaching the merits in divorce cases:

> Over the years, we have sharply limited the rule . . . in an effort to promote a strong policy in favor of reaching the merits of an appeal. . . .
> . . . .
> [W]e recognized that appeals from divorce judgments frequently involve the equitable distribution of property jointly or individually owned by the parties. Most of this property will be in the hands of one or the other of the parties before, during and after the trial on contested issues. And, much of this property is the stuff of daily lives: houses, cars, household furnishings. It should be an unusual set of circumstances, one demonstrating prejudice to the movant, or a very clear intent on the part of the appellant to accept the judgment and waive the right to appeal, that keeps us from reaching the merits of an action. Acceptance of benefits will seldom be prejudicial to the movant if either the benefits themselves or

3

the proceeds from their sale remain available for redistribution in subsequent proceedings.

471 N.W.2d at 489-90.

[¶7]   To be sure, several of these exceptions apply in this case. William Fercho has not cross-appealed, and the benefits accepted by Sheri Fercho are not subject to change or reversal on appeal. Sheri Fercho's acceptance of the property in the judgment is not inconsistent with her claims on appeal that she should have been awarded more than she received in the judgment. William Fercho also has not been prejudiced in any significant way by her acceptance of the property.

[¶8]   In *Wetzel v. Wetzel*, 1999 ND 29, ¶ 6, 589 N.W.2d 889, we made clear that "[g]enerally, acceptance of a property award in a divorce case does not constitute waiver of the right to appeal from the divorce judgment where the accepting party is claiming a right to a larger share of the marital estate." With the latest round of exceptions, we developed a three-part test in *Wetzel* to aid in determining when the appellant has waived the right to appeal: 1) there must be an unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment by the appellant; 2) the appellee must show the benefit accepted is one which the appellant would not be entitled to without the divorce decree; and 3) there must be unusual circumstances, demonstrating prejudice to the movant, or a very clear intent on the part of the appellant to accept the judgment and waive the right to appeal, to keep the Court from reaching the merits of the appeal. *Id*. at ¶ 5.

[¶9]   In *DeMers v. DeMers*, 2006 ND 142, ¶ 28, 717 N.W.2d 545, we concluded the appellant did not waive her right to appeal, because she did not consciously accept the benefits of the divorce judgment and the district court "made time of the essence by putting time limitations on the property distribution." Justice Crothers correctly noted in his concurrence in *DeMers*, at ¶ 41, that the third prong—requiring unusual circumstances demonstrating prejudice to the movant or a very clear intent on the part of the appellant to accept the judgment and waive the right to appeal—would seldom, if ever, be satisfied by the movant. *See also Sateren v. Sateren*, 2013 ND 12, ¶ 13, 826 N.W.2d 303

4

(denying motion to dismiss appeal, in part, because there was no signed satisfaction of judgment showing appellant's clear intent to accept judgment and waive right to appeal).

[¶10] Suffice to say, this once "general rule" has become anything but the general rule in our recent decisions. In fact, the more recent exception requiring prejudice or clear intent would almost always defeat the rule, except for the rare occasion where the appellant signs a satisfaction of judgment. Thus, the "general rule" has effectively been swallowed by its exceptions, leaving few if any circumstances in which the movant could show the appellant accepted the benefits of judgment and waived his right to appeal. However, this is not to say that we disagree with the exceptions that have been carved out of the general rule. To the contrary, we agree with the exceptions outlined above and the rationales underling those exceptions. Moreover, they promote our strong policy in favor of reaching the merits of an appeal in a divorce action. For these reasons, we conclude that a party to a divorce action who accepts benefits pursuant to a divorce judgment does not waive the right to appeal from the judgment, overruling *Williams v. Williams*, 69 N.W. 47 (N.D. 1896); *Tuttle v. Tuttle*, 124 N.W. 429 (N.D. 1909); *Boyle v. Boyle*, 126 N.W. 229 (N.D. 1910); *Montgomery v. Montgomery*, 88 N.W.2d 104 (N.D. 1958); *Geier v. Geier*, 332 N.W.2d 261 (N.D. 1983); *White v. White*, 434 N.W.2d 361 (N.D. 1989); and any other case applying this rule to dismiss the appeal of a divorce judgment. Our decision here has no application to non-divorce cases, or any other rule outside of the divorce context, such as waiver by voluntary payment or satisfaction of judgment. *See, e.g.*, *Lyon v. Ford Motor Co.*, 2000 ND 12, ¶ 7, 604 N.W.2d 453 (collecting cases). We deny William Fercho's motion to dismiss the appeal.

III

[¶11] Turning to the merits of this appeal, Sheri Fercho argues the district court abused its discretion in denying her motion to compel documents related to William Fercho's business holdings. A district court has broad discretion regarding the scope of discovery, and we will not reverse on appeal absent an abuse of discretion. *W.C. v. J.H.*, 2019 ND 171, ¶ 6, 930 N.W.2d 181. "An abuse of discretion by the district court is never assumed, and the burden of proof is

5

on the party seeking relief to establish it." *Id.* "The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

[¶12] Sheri Fercho acknowledges that William Fercho produced tax returns, operating agreements, an appraisal, and some financial statements. She asserts he failed to provide "bank statements, credit card statements, accounts receivables, list of asset acquisitions and valuation reports, and year-end depreciation schedules, all during the period of the marriage." She contends this information would have informed her expert and the court of further possible commingling of funds and valuations of the businesses. The court denied the motion to compel and stated, "I think there's enough information there. And I certainly think there's enough information that's been provided to do a deposition of Mr. Fercho." The court continued the trial and ordered William Fercho to pay Sheri Fercho $25,000 to cover her attorney's fees and expert expenses. Sheri Fercho argues the court's lack of findings and analysis in denying her motion to compel constitutes an abuse of discretion.

[¶13] William Fercho argues that Sheri Fercho was required to subpoena the documents directly from the businesses, not from him as a minority shareholder. He asserts the court appropriately exercised its discretion in denying the motion to compel discovery, and he cites N.D.R.Civ.P. 26(b)(1)(B)(i) and 26(c)(1). Although the court's discussion of this issue was limited, we are able to discern the court's rationale for denying the motion to compel from the hearing transcript. *See Williams v. Williams*, 2021 ND 134, ¶ 6, 962 N.W.2d 601 ("We will not remand for clarification of findings of fact when, through inference or deduction, we may discern the district court's rationale."). William Fercho argued he did not possess the documents requested and they would be burdensome to produce. He testified the request was to harass or cause undue expense. William Fercho's argument and testimony coupled with the court's statement that enough information had been provided shows the court determined the information sought was either unreasonably cumulative or duplicative or unduly burdensome to William Fercho. *See* N.D.R.Civ.P. 26(b)(1)(B)(i) (requiring the court to limit discovery if it determines the

6

"discovery sought is unreasonably cumulative or duplicative, or it can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit"). Accordingly, the court did not abuse its discretion by denying the motion to compel.

## IV

[¶14] Sheri Fercho argues the premarital agreement is invalid and unenforceable because she did not voluntarily enter into the agreement and it is unconscionable.

[¶15] The premarital agreement was entered into in 2005. Thus, the Uniform Premarital Agreement Act, N.D.C.C. ch. 14-03.1 (repealed 2013), governs the parties' agreement. *Tschider v. Tschider*, 2019 ND 112, ¶ 7, 926 N.W.2d 126. Under N.D.C.C. § 14-03.1-03(1) (2004), parties may contract to the disposition of property upon divorce and to the modification or elimination of spousal support. A premarital agreement is a contract, and its interpretation is a question of law, which we review de novo on the entire record. *Tschider*, at ¶ 8.

[¶16] Under N.D.C.C. § 14-03.1-06(1) (2004), a premarital agreement is not enforceable if the party against whom enforcement is sought proves:

a.  That party did not execute the agreement voluntarily; or
b.  The agreement was unconscionable when it was executed and, before execution of the agreement, that party:
    (1) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
    (2) Did not voluntarily sign a document expressly waiving any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
    (3) Did not have notice of the property or financial obligations of the other party.

"If a provision of a premarital agreement modifies or eliminates spousal support and that modification or elimination causes one party to the agreement to be eligible for support under a program of public assistance at the time of separation or marital dissolution, a court, notwithstanding the terms of the

agreement, may require the other party to provide support to the extent necessary to avoid that eligibility." N.D.C.C. § 14-03.1-06(2) (2004). Further, "if a court finds that the enforcement of a premarital agreement would be clearly unconscionable, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provisions, or limit the application of an unconscionable provision to avoid an unconscionable result." N.D.C.C. § 14-03.1-07 (2004). The "clearly unconscionable" standard "requires complete factual findings about the relative property values and the other resources and foreseeable needs of the spouse asserting the premarital agreement is unconscionable." *Tschider*, 2019 ND 112, ¶ 9. An agreement may be deemed unenforceable if it is unconscionable "at the time of execution, at the time of separation or marital dissolution, or at the time of enforcement." *Id.* at ¶ 8. Unconscionability of a premarital agreement is a matter of law. N.D.C.C. § 14-03.1-06(3) (2004). However, "it turns on factual findings related to the relative property values, the parties' financial circumstances, and their ongoing need." *Sailer v. Sailer*, 2009 ND 73, ¶ 21, 764 N.W.2d 445.

A

[¶17] Sheri Fercho argues she did not voluntarily enter into the premarital agreement. "Procedural unconscionability focuses upon formation of the contract and fairness of the bargaining process, including factors such as inequality of bargaining power, oppression, and unfair surprise." *Strand v. U.S. Bank Nat'l Ass'n ND*, 2005 ND 68, ¶ 13, 693 N.W.2d 918.

[¶18] The district court found the parties were represented by separate counsel. *See Binek v. Binek*, 2004 ND 5, ¶ 8, 673 N.W.2d 594 (stating "adequate legal representation will often be the best evidence that a spouse signed a premarital agreement knowledgeably and voluntarily"). Sheri Fercho testified her attorney reviewed the premarital agreement with her and encouraged her to sign it. At no point does she allege her attorney's representation was deficient. While Sheri Fercho signed the document at William Fercho's attorney's office, she testified that his attorney was pleasant and civil and that he reviewed the agreement's essential provisions with her prior to signing. She did not object to signing the agreement, inquire about its terms, or request any

8

provision be modified. At the time of signing, she was a 38-year-old college graduate who had some prior business experience. Sheri Fercho testified she understood the premarital agreement and its terms were clear and understandable. We conclude the court did not err in finding Sheri Fercho voluntarily executed the premarital agreement.

B

[¶19] Sheri Fercho contends that the terms of the agreement are unconscionable. "Substantive unconscionability focuses on the harshness or one-sidedness of the agreement's provisions." *Eberle v. Eberle*, 2009 ND 107, ¶ 18, 766 N.W.2d 477.

[¶20] The premarital agreement provides that in the event of a divorce, the parties shall each retain separate ownership of their own non-marital property. Non-marital property is defined by the agreement as "any interest of Bill or Sheri in their separate assets, real or personal, that they possess or control as of the date of the marriage and that are generally described on [the attached exhibits]; any assets acquired by them individually by gift, inheritance, payable on death or as a beneficiary of a trust from their parents or other family members . . . ; and any increase in the value of any interest . . . ." Marital property under the agreement is subject to division upon divorce. The agreement also discloses William Fercho's assets and net worth for 2003 and 2004 and specifically waives the parties' right to further disclosure of their property, liabilities, and income. According to the agreement, "Each of them is satisfied with the disclosure described on [the attached exhibits]." The exhibits show that in 2004, William Fercho had a net worth of $2.95 million and Sheri Fercho had a net worth of $5,359. The marital estate grew to $1.9 million over the course of the marriage. We conclude the premarital agreement was conscionable when it was executed by the parties. Specifically, Sheri Fercho was provided a fair and reasonable disclosure of William Fercho's property and financial obligations, she voluntarily signed the premarital agreement which expressly waived any right to further disclosure of his property or financial obligations, and she had adequate notice of his property or financial obligations. *See* N.D.C.C. § 14-03.1-06(1)(b).

9

[¶21] Additionally, the premarital agreement restricts, but does not eliminate, spousal support, stating, "Bill and Sheri do not specifically renounce any right to claim alimony or maintenance from the other. But, for purposes of determining whether or not alimony or maintenance should be paid, the Non-marital property of each, together with any income derived therefrom, shall not be considered in making that determination." Although the premarital agreement modifies spousal support, Sheri Fercho does not claim the modification would cause her to be eligible for support under a public assistance program. Thus, the spousal support provision is conscionable under N.D.C.C. § 14-03.1-06(2).

[¶22] Beyond the spousal support provision, we conclude the entirety of the premarital agreement was not clearly unconscionable at the time of separation, divorce, or enforcement. The district court found that the combined marital and non-marital estates had a valuation of $10.6 million, consisting of William Fercho's $8.7 million of non-marital property, and $1.9 million of marital property subject to equitable distribution. The court found that both parties lived in mortgage-free houses, drove unencumbered vehicles, and other than monthly credit card payments, had no liabilities. The court found William Fercho's claim of $8,360 in ongoing monthly expenses to be credible. Sheri Fercho, on the other hand, submitted two monthly budgets: $4,179 (in her pretrial statement) and $8,128 (on the eve of trial). The court found the $8,128 monthly budget was not supported by the evidence, and although it found $4,179 was slightly low, $4,179 was the more credible amount. The premarital agreement did not eliminate spousal support or prohibit an unequal award of the marital estate in favor of one spouse over the other spouse. The court ultimately divided the marital estate 70/30 in favor of Sheri Fercho, leaving her with $1.26 million in assets.

[¶23] Certainly, this is not a case of one spouse being left in poverty or requiring public assistance. *See, e.g.*, *Sailer*, 2009 ND 73, ¶¶ 62, 68, 70-72 (Maring, J., dissenting) (concluding premarital agreement was substantively unconscionable at time of enforcement because it left wife in poverty after a fifteen-year marriage with no real property, investments, retirement accounts, assets, or spousal support). Nor is it the type of case where one spouse waives

all of his or her interests, including to the marital property. *See McMullin v. McMullin*, 926 S.W.2d 108, 111 (Mo. Ct. App. 1996) (concluding premarital agreement was substantively *unconscionable* where wife waived all interests in marital property); *Penrod v. Penrod*, 624 S.W.3d 905, 914 (Mo. Ct. App. 2021) (concluding premarital agreement was substantively *conscionable* because although it resulted in a disparity in property distribution it did not prevent wife from obtaining marital assets). While the effect of enforcing the premarital agreement in this case is that William Fercho is entitled to all of his non-marital property, valued at $8.7 million, a large disparity in the parties' wealth—approximately $2.95 million—existed at the time of executing the agreement. *See In re Marriage of Shanks*, 758 N.W.2d 506, 516 (Iowa 2008) (concluding premarital agreement was not substantively unconscionable where agreement "sought to maintain the parties' premarital assets as separate property and to perpetuate their premarital financial conditions throughout the marriage"). Sheri Fercho received 70 percent of the marital assets worth approximately $1.26 million, including the mortgage-free marital home, and has no long-term liabilities. The court found she has the ability to meet her ongoing monthly expenses. Although the court did not award her spousal support, the premarital agreement did not prohibit such support. *See L.R.O. v. N.D.O.*, 475 P.3d 1167, 1182 (Haw. 2020) (concluding premarital agreement was not substantively unconscionable where each spouse preserved premarital assets and released other spouse from spousal support). We conclude the court's findings are not clearly erroneous and the premarital agreement was not so one-sided at the time of divorce or enforcement as to be substantively unconscionable.

V

[¶24] Sheri Fercho argues the district court erred in its valuations and in classifying certain assets as non-marital, instead of marital. "A district court's valuation and distribution of marital property are findings of fact, subject to the clearly erroneous standard of review." *Eberle v. Eberle*, 2010 ND 107, ¶ 16, 783 N.W.2d 254. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after

11

reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made." *Id.*

[¶25] The district court found William Fercho commingled certain funds between non-marital and marital accounts, converting $752,613 of non-marital property to marital property. However, because $75,318 of that went toward paying the mortgage on the marital home, the court attributed the remaining commingled funds of $677,295 to the marital estate. Sheri Fercho asserts that when commingled funds are used to purchase an asset, that asset also becomes marital property, citing *Jangula v. Jangula*, 2005 ND 203, 706 N.W.2d 85. She claims William Fercho used this money to "pay $55,000 on the loan for his interest in H&F stock ownership, buy treasury bonds, pay income tax liabilities, which presumably included taxes from his K-1 income from the businesses, and put money back into his investment account."

[¶26] In *Jangula*, we reversed the district court's award of the marital home to the husband under a prenuptial agreement. 2005 ND 203, ¶¶ 16-17. We concluded the home was marital property because the money used to purchase the home came from commingled funds in a joint bank account with the right of survivorship. *Id.* at ¶¶ 13-14. Further, after the home was purchased by the husband, he deeded the home to himself and his wife, placing the home into a joint tenancy. *Id.* at ¶ 15; *see also Tweeten v. Tweeten*, 2009 ND 164, ¶ 15, 772 N.W.2d 595 ("To the extent the terms of the premarital agreement were enforceable, the Tweetens' act of transferring the L Ranch and Tweeten properties to themselves as joint tenants with a right of survivorship destroyed the separate ownership and made the premarital agreement inapplicable.").

[¶27] Here, there is no joint tenancy, and the district court found the account which contained commingled funds was not a joint account. Sheri Fercho testified they never had a joint account. Thus, this case is dissimilar to *Jangula* in those respects. However, the court, finding commingling occurred, attributed the commingled funds to the marital estate. Because these funds were used in some manner, they no longer exist in the marital estate. To attribute the commingled funds *and* the assets purchased with these funds to the marital estate would be a windfall in favor of the marital estate,

12

inconsistent with the premarital agreement and North Dakota law, and to the detriment of parties' ability to freely contract and to maintain ownership of their premarital assets if so agreed upon.

[¶28] Next, Sheri Fercho argues William Fercho received a check of $42,629 from Haga Kommer for the sale of his accounting practice which was erroneously unaccounted for in the marital estate. William Fercho asserts the parties stipulated to the value of the Anderson & Fercho assets prior to trial in their "Joint 8.3 Asset and Debt List" and the court did not err in valuing the marital estate. Indeed, this asset is not expressly listed on the parties' stipulated asset and debt list. While the court is not bound by the parties' stipulated asset values under N.D.R.Ct. 8.3(a), *Gustafson v. Gustafson*, 2008 ND 233, ¶ 12, 758 N.W.2d 895, the court may rely upon the stipulated values in valuing the marital estate to the extent there is evidentiary support in the record, *Eberle*, 2010 ND 107, ¶ 18; *Wanttaja v. Wanttaja*, 2016 ND 14, ¶¶ 16-17, 873 N.W.2d 911. On this record, we are not left with a definite and firm conviction a mistake was made in the court's valuation of the marital estate, nor has Sheri Fercho satisfied the standard of review by showing there is no evidence to support the court's valuation. Accordingly, the court did not clearly err in valuing and distributing the marital estate.

[¶29] Last, Sheri Fercho contends that the district court erred in its valuation of William Fercho's non-marital business holdings. Although the precise value of a spouse's non-marital property is usually required to determine whether the premarital agreement is conscionable and enforceable, it is not necessary here. Given Sheri Fercho's financial circumstances and ongoing needs, she will not be left destitute or require public assistance. The premarital agreement did not eliminate the possibility of spousal support and allowed for an unequal award of the marital estate, which ultimately was 70 percent in her favor. Whether William Fercho's business holdings are valued at $4.6 million, as the court found, or $10.9 million, as Sheri Fercho asserted, our conclusion that the premarital agreement is conscionable and enforceable remains the same for the reasons stated in Part IV. Moreover, because we conclude the parties' premarital agreement is enforceable, the value of William Fercho's non-marital assets is irrelevant to the court's valuation and distribution of the marital

estate. Absent the conclusion that the marital agreement is unenforceable, Sheri Fercho does not argue that the court erred in finding these business holdings to be non-marital assets or that a larger valuation of the business holdings could impact the valuation or distribution of the marital estate. Thus, we conclude the court's valuation of William Fercho's non-marital business holdings are immaterial.

## VI

[¶30] Sheri Fercho contends the district court erred by failing to award her spousal support.

[¶31] The premarital agreement provides that "for purposes of determining whether or not alimony or maintenance should be paid, the Non-marital property of each, together with any income derived therefrom, shall not be considered in making that determination." Having determined the parties' premarital agreement is enforceable, we construe this spousal support provision to mean only marital property may be considered in the court's award of spousal support.

[¶32] The court "may require one party to pay spousal support to the other party for a limited period of time," "taking into consideration the circumstances of the parties." N.D.C.C. § 14-05-24.1. "When considering whether to award spousal support, the trial court must consider the relevant factors under the *Ruff-Fischer* guidelines." *Paulson v. Paulson*, 2010 ND 100, ¶ 9, 783 N.W.2d 262. The *Ruff-Fischer* factors include:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Binek*, 2004 ND 5, ¶ 16. A spousal support award must be based on "both the supporting spouse's needs and ability to pay and the receiving spouse's income

and needs." *Paulson*, at ¶ 11. "The trial court is not required to make a finding on each factor, but it must explain its rationale for its determination." *Id.* at ¶ 9. "Property division and spousal support are interrelated and intertwined and often must be considered together, especially when there is a large difference in earning power between the spouses." *Id.* "Spousal support determinations are findings of fact and will not be reversed on appeal unless they are clearly erroneous." *Binek*, at ¶ 16.

[¶33] The district court made the following findings under the *Ruff-Fischer* guidelines. William Fercho is 56 years old and Sheri Fercho is 54. The parties were married for fifteen years. Neither one suffers from physical or mental health conditions that would impair their ability to work and earn a living. William Fercho is an experienced public accountant, earning $120,000 during the height of his career, and owned his own accounting business. In 2017, he sold his business and client list to another accounting firm, Haga Kommer, which he now works for on a "semi-retired" basis, providing accounting services for his family interests. In 2019, he earned $36,448; in 2020, he earned $5,082; and in 2021 and coming years, he expects to earn $5,000 or less. As a condition of selling his business, William Fercho will be subject to a three-year non-compete clause once he fully retires. Sheri Fercho possesses a bachelor's degree in business and marketing. She gave birth during the first year of marriage and was a stay-at-home mother during the marriage, providing the care needed for their child. The court found that although she does not have extensive work experience and may need additional education or training, Sheri Fercho is intelligent and capable of obtaining worthwhile employment. Both parties live in "substantial, paid-off houses, in nice neighborhoods," and drive nice vehicles. Other than monthly credit card payments, the parties have no liabilities.

[¶34] The court found William Fercho's claim of $8,360 in monthly expenses unchallenged and credible. The court found Sheri Fercho's second submitted monthly budget of $8,128 was not supported by the evidence and her first submitted budget of $4,179 was the more credible amount. The court valued the marital estate at $1,893,648, which is comprised of non-income producing assets, save the retirement accounts. The court found the bulk of the marital estate consisted of assets that were formerly William Fercho's non-marital

assets which were transferred to the marital estate during the marriage, including the marital home and the $677,295 of commingled funds. Departing from the 50/50 equal property division, the court awarded a 70/30 split in favor of Sheri Fercho, citing William Fercho's sizeable non-marital estate as the primary factor against an even 50/50 division of the marital estate.

[¶35] The court found that "William's earnings and earning capacity (as an accountant) are insufficient to meet his own personal living expenses and/or to fulfill his $3,222 monthly child support obligation. Without the income from his non-marital assets, William does not have the ability to pay spousal support." The court's finding is supported by the record. William Fercho is "semi-retired," receiving $5,000 per year as an accountant, after selling his accounting firm and client list to Haga Kommer and being subject to a three-year non-compete agreement. The court found that although Sheri Fercho may be in need of some rehabilitation due to her stale education, it specifically took this into consideration when it distributed the marital estate, which resulted in Sheri Fercho receiving 70 percent of the $1.8 million "adjusted" marital estate.[1] The court found Sheri Fercho has no house payment and has the ability to meet her monthly expenses.

[¶36] Because the premarital agreement is valid and enforceable and prohibits non-marital property from being considered for purposes of spousal support, the court properly excluded the non-marital assets from its determination. The court's findings that William Fercho does not have the ability to pay spousal support based on his share of the marital assets and that Sheri Fercho has the ability to satisfy her monthly expenses are not clearly erroneous. We therefore conclude the court did not clearly err by denying spousal support.

## VII

[¶37] Sheri Fercho argues the district court erred by failing to award her attorney's fees. "The district court has broad discretion to award attorney's fees

---

[1] The district court reduced the marital estate by $91,125 to reflect the amount that William Fercho paid from his non-marital estate to Sheri Fercho for her attorney and expert fees. As a result, the marital estate was "adjusted" from $1,893,648 to $1,802,523.

16

in divorce proceedings under N.D.C.C. § 14-05-23." *Tschider*, 2019 ND 112, ¶ 34. "The primary standard to award attorney fees under N.D.C.C. § 14-05-23 is consideration of one spouse's needs and the other spouse's ability to pay." *Id.* Additional considerations may include "whether one party's conduct has unreasonably increased the time spent on the case, the property each party owns, whether liquid or fixed, and the parties' relative incomes." *Gustafson*, 2008 ND 233, ¶ 14.

[¶38] At several points throughout the divorce action, the court awarded Sheri Fercho attorney's fees and expert expenses totaling $91,125 to be paid by William Fercho. The court found that "Sheri was essentially awarded $91,125 'off the top' of the marital estate for professional fees" and subsequently reduced the marital estate by this amount, leading to the "adjusted" marital estate. Sheri Fercho does not assert this was a misapplication of the law. Instead, she argues the result of this reduction in the marital estate is that William Fercho did not pay any of her attorney's fees and she is entitled to $91,125 in attorney's fees. Although we disagree with Sheri Fercho's assertion on a factual basis,[2] we need not decide whether William Fercho's effective attorney's fee payment was $91,125, nothing, or somewhere in between, because Sheri Fercho is not arguing the "adjusted" marital estate valuation or 70-30 distribution is clearly erroneous. In Part V, Sheri Fercho argued that the assets paid for by the commingled funds and the $42,629 check from Haga Kommer should have been included in the marital estate. We have addressed and rejected those arguments. Sheri Fercho now argues she is entitled to an award of attorney's fees equivalent to the reduction in the marital estate ($91,125). Accordingly, we review only whether the court abused its discretion by not awarding her $91,125 for fees that have already been paid for with William Fercho's non-marital property. Sheri Fercho does not argue how the court abused its discretion by not awarding her this amount. Because a primary consideration in awarding fees—one spouse's needs—is absent, as the

---

[2] The court's reduction of the marital estate by $91,125 resulted in William Fercho effectively paying for a portion of this amount from his non-marital assets. Had the marital estate not been reduced by $91,125, under the court's 70-30 distribution in favor of Sheri Fercho, he would have received 30%, or $27,337.50.

fee no longer exists, we conclude the court did not abuse its discretion in denying this award.

[¶39] Sheri Fercho also contends the court erred by not awarding her $13,375 in outstanding attorney and expert fees, which she accumulated by the end of trial. The court found the premarital agreement "does not allow it to require William to give Sheri his non-marital dollars, whether as reimbursement or payment of her attorney's fees." The court found that Sheri Fercho will have sufficient liquid assets to pay her attorney's and expert's fees. Sheri Fercho argues that the premarital agreement does not restrict the court from awarding her attorney's fees. William Fercho argues that because the premarital agreement's prohibition against awarding one party's non-marital assets to the other had no attorney's fees exception, the court correctly declined to award attorney's fees.

[¶40] Although the plain language of the premarital agreement does not expressly restrict consideration of a party's non-marital property when determining whether to award attorney's fees, we need not decide the agreement's limits. Assuming without deciding the premarital agreement allows the court to consider William Fercho's non-marital property in awarding attorney's fees, the court found Sheri Fercho has the ability to pay her remaining attorney's fees, which she alleges are $13,375. She does not contest this finding. We conclude the district court did not abuse its discretion in ordering that each party be responsible for their own attorney's fees. *See Tschider*, 2019 ND 112, ¶ 34 (concluding the court did not abuse its discretion in refusing to award attorney's fees when the parties have the ability to pay their own fees).

## VIII

[¶41] Sheri Fercho requests attorney's fees on appeal for having to respond to William Fercho's motion to dismiss, which she asserts is frivolous and untimely. Although we do not find the motion to dismiss frivolous, we conclude it was untimely.

18

[¶42] Under N.D.R.App.P. 38, the Court may award reasonable attorney's fees if "any party has been dilatory in prosecuting the appeal." William Fercho filed his motion to dismiss six days before oral argument on the merits of the appeal, requiring an expedited response from Sheri Fercho. *See* N.D.R.App.P. 27(b) (allowing 14 days for response unless otherwise provided by the Court). He provides no explanation for the untimely filing. The notice of appeal in this case was filed in March 2022, and both parties submitted their briefs on the merits in May 2022. The motion to dismiss was not filed until mid-June 2022. We conclude that William Fercho was dilatory in bringing his motion to dismiss on appeal and award Sheri Fercho her reasonable attorney's fees, which she declares in her attached declaration are $1,850.

IX

[¶43] We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or are without merit. The judgment and discovery order are affirmed. William Fercho's motion to dismiss is denied. Sheri Fercho's request for attorney's fees on appeal is granted, and we award her $1,850 in attorney's fees.

[¶44] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Jerod E. Tufte

**McEvers, Justice, concurring specially.**

[¶45] I agree with and join the majority in sections I, II, III, IV, V, VII, and VIII. I specially concur with the result reached by the majority in section VI.

[¶46] I agree the district court was limited in its consideration of spousal support by the terms of the premarital agreement. Majority, at ¶ 31. I also agree the award of spousal support must be based on both the supporting spouse's needs and ability to pay and the receiving spouse's income and needs. Majority, at ¶ 32. I write separately to note the court's finding on Sheri Fercho's

19

monthly budgeted expenses of $4,179 is not supported by the record. I also note the court's finding William Fercho does not have the ability to pay and Sheri Fercho has the ability to meet her monthly expenses are not supported by the record. However, after reviewing the entire record, I am not left with a definite and firm conviction that a mistake has been made because any errors made by the court were harmless.

[¶47] The district court first erred in determining Sheri Fercho's monthly expenses. While I agree with the court that not all of the expenses claimed in her second monthly budget of expenses are supported by the evidence, the court erred in adopting her earlier monthly budget without considering the reasons for the amendments. In its interim order, the court ordered William Fercho to pay the home insurance and all residential utilities (including cable, Direct TV and cell phones). These amounts were not included in Sheri Fercho's original budget. Her amended monthly budget included: natural gas $60, electricity $80, water and sewer $65, cable/internet $120, cell phone $150, and HOA fees of $113. All of these items are legitimate expenses not included in Sheri Fercho's original budget, which the court recognized seemed "slightly low." In addition, while the court recognized Sheri Fercho would have to pay the home insurance previously paid by William Fercho, as well as the property taxes on the home, the court did not consider that she had not included the $650 per month in property taxes and insurance in her first proposed budget. The court specifically found that Sheri Fercho would be responsible for the property taxes, insurance, and maintenance of the home. The court should have added the amount of property taxes and insurance to Sheri Fercho's monthly expenses. The increases for utilities, property taxes, and insurance would have increased her monthly expenses over $1,200 per month. Considering her previous monthly expenses, which the court adopted along with these additional expenses, Sheri Fercho's monthly expenses were at least $5,400 per month. Even giving the court deference for credibility determinations, the court's finding on Sheri Fercho's monthly budgeted expenses of $4,179 is not supported by the record.

[¶48] The district court's finding that Sheri Fercho has the current ability to meet her monthly expenses also lacks evidentiary support. I do not doubt that

20

Sheri Fercho is capable of working. However, nothing in the record suggests she has the current ability to meet her monthly expenses found by the district court, and it is even less likely she can earn $5,400 per month. Sheri Fercho was unemployed and has been out of the work force for many years. She "has foregone opportunities or lost advantages as a consequence of the marriage and [ ] has contributed during the marriage to the supporting spouse's increased earning capacity." *Mertz v. Mertz*, 2015 ND 13, ¶ 9, 858 N.W.2d 292 (quoting *Sommer v. Sommer*, 2001 ND 191, ¶ 10, 636 N.W.2d 423). "Relevant to a spousal support determination is the distribution of marital property, the liquid nature of the property, and the income-producing nature of property." *Schiff v. Schiff*, 2013 ND 142, ¶ 8, 835 N.W.2d 810 (quoting *Marschner v. Marschner*, 2001 ND 4, ¶ 13, 621 N.W.2d 339). The only way Sheri Fercho can meet her monthly expenses is to expend the marital property she was awarded. The district court found the parties' marital assets were not income producing. Sheri Fercho was awarded some of the retirement accounts, but she cannot access those accounts for several years without resulting in significant tax consequences. Recognizing her needs, the district court found in order to meet her expenses Sheri Fercho would have return to work and she would also have to rely on her share of the marital estate if she was in need of additional education or training to gain satisfactory employment.

[¶49] The district court's finding that William Fercho has no ability to pay is also not supported by the record. Even taking into consideration the premarital agreement, William Fercho is 56 years old. He is a certified public account, and his employer pays to continue that certification. He regularly earned over $100,000 annually during the marriage. *See* Majority, at ¶ 33 ("William Fercho is an experienced public accountant, earning $120,000 during the height of his career"). He is capable of working more and earning significantly more from his employer without violating his non-compete or even triggering his non-compete. To limit William Fercho's ability to pay to what he is currently earning in his "semi-retired" status does not reflect his earning ability. While I agree that the non-marital property cannot be used to determine William Fercho's ability to pay, he is capable of earning more than $5,000 per year. William Fercho testified that he is employed with Haga Kommer and that his non-compete does not start until he is officially retired. His non-compete lasts

21

three years. However, for the past three years, William Fercho has chosen to do minimal work for Haga Kommer, amounting to an income of $36,448 in 2019, $5,082 in 2020, and in 2021 and coming years, he expects to earn $5,000 or less. Majority, at ¶ 33. William Fercho's current self-limited income is not indicative of his ability to earn income. *See* Lohstreter v. Lohstreter, 2001 ND 45, ¶ 14, 623 N.W.2d 350 (explaining current income is not indicative of a party's ability to earn income when the paying spouse has the ability to hold a higher paying job).

[¶50] Alternatively, William Fercho is a capable, educated man. Certainly, he can earn more than $5,000 a year in a role outside of the accounting field. "Earned income is not the sole consideration in determining a party's ability to pay support, and a court must consider the party's net worth, including the extent of the party's assets and the party's earning ability as demonstrated by past income." *McDowell v. McDowell*, 2001 ND 176, ¶ 13, 635 N.W.2d 139; *see also Schulte v. Kramer,* 2012 ND 163, ¶ 23, 820 N.W.2d 318. Neither party in a divorce should be allowed to minimize their income to avoid paying spousal support or in seeking spousal support.

[¶51] Despite my objections to some of the district court's findings, I still concur with the majority that the court did not err in not awarding spousal support. Questions of property division and spousal support cannot be considered separately or in a vacuum, but must be examined and dealt with together, especially when there is a large difference in earning power between the spouses. *Stock v. Stock*, 2016 ND 1, ¶ 13, 873 N.W.2d 38; *Fox v. Fox*, 1999 ND 68, ¶ 22, 592 N.W.2d 541. Given the district court's distribution of property, the erroneous findings I have identified are harmless. After considering the *Ruff-Fischer* factors, the court divided the marital estate 70/30 in favor of Sheri Fercho, which left her with $1.26 million in assets. Majority, at ¶ 22. This Court has recognized that because property division and spousal support are interrelated, the court may award greater amounts of property in lieu of spousal support. *Horner v. Horner*, 2004 ND 165, ¶ 14, 686 N.W.2d 131. After considering the *Ruff-Fischer* factors the court found:

Based on the foregoing considerations, the court deems it is fair and equitable to depart from the 50/50 norm. The most influential consideration leading to this departure is William's sizeable non-marital estate and the considerable annual income it provides. The parties' significant earning disparity makes a disparate distribution of their marital estate equitable and fair.

When specifically considering spousal support, the court found "[t]he favorable distribution of the marital estate will assist Sheri in meeting her needs." Although a spouse is not required to deplete his or her property distribution in order to live, the assets awarded to Sheri Fercho in this case are sufficient to allow her to meet her needs and obtain any additional training she may need to reenter the workforce "without substantially depleting her assets." *Knudson v. Knudson*, 2018 ND 199, ¶ 21, 916 N.W.2d 793 (affirming district court's finding that a spouse did not need spousal support based on the property awarded to her); *see also Willprecht v. Willprecht*, 2021 ND 17, ¶ 24, 954 N.W.2d 707 (McEvers, J., concurring in part) ("depletion or dissipation of property is a factor to consider when applying the Ruff-Fischer factors and the parties' needs versus ability to pay").

[¶52] Even though William Fercho has the ability to pay and the district court underestimated Sheri Fercho's expenses and overestimated her current ability to meet them, I am not left with a definite and firm conviction the court made a mistake given the court's property distribution. I concur with the majority that the district court judgment should be affirmed.

[¶53] Lisa Fair McEvers